[No. 6988. Decided October 3, 1908.]

JERRY MEEKER, *as Administrator, et al., Appellants,* v.
SIMON METTLER *et al., Respondents.*[1]

GUARDIAN AND WARD—FINAL DISCHARGE—JURISDICTION—APPEARANCE OF WARD. Personal appearance of a ward who has attained his majority, upon the hearing of the final account of a guardian of a minor, is sufficient, without the appointment of a guardian *ad litem,* to give the court jurisdiction to order a discharge of the guardian, where the court had jurisdiction of the guardianship.

SAME—JUDGMENT DECLARING MAJORITY—EFFECT—CONCLUSIVENESS—PARTIES BOUND. The finding of a court having jurisdiction of the guardianship of a minor, that the ward has attained his majority is binding upon the ward and privies in estate until vacated or set aside for fraud or error; and is consequently a bar to an action by his heirs to set aside his subsequent conveyances on the ground that he was a minor (RUDKIN, J., dissenting).

Appeal from a judgment of the superior court for Pierce county, Miller, J., entered March 8, 1907, in favor of the defendants upon the pleadings, in an action to set aside deeds and recover lands. Affirmed.

*Charles Bedford* and *Fremont Campbell,* for appellants.
*S. F. McAnally* and *C. O. Bates,* for respondents.

[1]Reported in 97 Pac. 507.

MOUNT, J.—This action was brought by the appellants to disaffirm certain deeds made by Peter Satiacum, deceased, in his lifetime, and to recover back from respondents the lands described in such deeds. After the issues were made up, the trial court entered a judgment in favor of the defendants upon the pleadings. Plaintiffs prosecute this appeal from that judgment.

The facts as shown by the pleadings are, in substance, as follows: Peter Satiacum during his lifetime was an Indian residing in Pierce county, this state. In the year 1895, while Peter Satiacum was a minor, one P. C. Kauffman was regularly appointed by the superior court of Pierce county and qualified as guardian of the person and estate of said minor. The guardian thus appointed acted as such until the year 1903, when on July 6 of that year the guardian filed his final account in the superior court of Pierce county, and prayed to be discharged for the reason that the minor had attained his majority. The final account thereafter came on for hearing in said court, and the ward being present the court, after hearing the final account, made the following order:

"This cause coming on regularly to be heard on the final report of P. C. Kauffman, guardian of said minor Peter Satiacum, said minor having arrived at the full legal age of twenty-one years and being entitled to have said guardian discharged and to have the control of his property;

"It further appearing to the court, by the report of the guardian filed therein, that he has received $430.43 for his said ward and that he has expended for and in his behalf $369.85, and that there now remains in his hands $60.58, and that $35 is a reasonable sum to be allowed as his compensation.

"It is hereby ordered that the said account of the said guardian be and the same is hereby approved. It is further ordered that the said guardian be and he is hereby authorized to retain $35 of the money in his hands as his compensation, and that upon the payment of the balance then remaining in his hands to said Peter Satiacum and filing his receipt there-

for in this court, the said P. C. Kauffman and his bondsmen be discharged from all further liability herein to the said Peter Satiacum.

"Dated this 6th day of July, 1903."

Thereafter, on the 5th day of August, 1903, the court made the following order, Mr. Kauffman and his ward being present:

"P. C. Kauffman, the guardian of the estate of the above named Peter Satiacum, having duly performed all the acts lawfully required of him and it having been decreed by the court that the said Peter Satiacum has arrived at the age of his majority, being over the age of twenty-one years, and the said P. C. Kauffman having duly accounted to said Peter Satiacum and paid over to him all the estate coming into his hands as such guardian,

"It is hereby ordered, adjudged and decreed that said P. C. Kauffman has fully and faithfully discharged the duties of his trust, that he is hereby fully and wholly discharged from all further duties as such guardian and that his letters of guardianship are hereby vacated, and that said guardian and his sureties are hereby released from all and any further liability by virtue of said trust."

Subsequently, on August 15, 1903, Peter Satiacum, representing himself to be of full age, and in consideration of $800, sold, and by warranty deed conveyed, to defendants Simon Mettler and Annie Mettler, an undivided one-fifth interest in the lands in controversy. Thereafter, in consideration of $525, Peter Satiacum sold to the same parties an undivided two-fifteenths interest in the same lands, in addition to the one-fifth theretofore sold. In the month of December, 1905, Peter Satiacum died. On May 16, 1906, these appellants, being collateral heirs to Peter Satiacum, brought this action to recover back the lands described in the deeds, alleging that at the time of the sale and delivery of the deeds the grantor was a minor. Plaintiffs tendered back the purchase money. The respondents Janzen and Eschback are subsequent purchasers from the Mettlers, but it is alleged

that they took title with the notice of the minority of the deceased at the time the deeds were made by him. The trial court held that the orders above quoted adjudged that Peter Satiacum at the date thereof was of lawful age, that said orders are *res adjudicata* as to these appellants, and that the verity of these orders cannot be attacked by general denials.

Appellants argue that the orders upon their face must show jurisdiction in the court, and that inasmuch as they do not state that Peter Satiacum was served with notice of the hearing, and no guardian *ad litem* was appointed or appeared for him, they fail to show jurisdiction in the court, and for that reason the orders are void. We cannot agree to that contention. The fact that a guardian was regularly appointed over the person and estate of the minor in the year 1895, which is admitted, necessarily gave the court general jurisdiction over the person of the minor and of his estate. This jurisdiction continued until the minor attained his majority, at which time the right to manage the estate and the person of the said minor by the court or the guardian ceased. Bal. Code, § 6401 (P. C. § 2735). If the ward had arrived at the age of majority when the final account of the guardian was filed, no guardian *ad litem* was necessary or proper. His personal appearance was sufficient to give the court jurisdiction, if personal jurisdiction were necessary. It is admitted, because alleged in the answer and not denied, that the ward appeared at the application for discharge and the hearing on the guardian's final report. It then appeared to the court upon the hearing that the ward had arrived at the age of majority. This fact clearly gave the court jurisdiction to enter the order of final discharge of the guardian, and cast the burden thereafter upon the ward to manage his own estate. The finding of the court that the ward had arrived at the age of majority was therefore not void, but voidable only, and was binding upon the ward and those in privity with him until vacated or set aside for fraud or for error.

Woerner, Guardianship, § 98; *Wilson v. Hubbard,* 39 Wash. 671, 82 Pac. 154. In the case cited, we said:

"Upon attaining majority, and within the time limited either by the rules of common law or statute, such minors may attack any such judgment for fraud or error shown. In this state, statutory relief is afforded, as said sections 5153 and 5156 secure to appellants herein one ·year after coming of age, within which, by proper proceedings and upon proper showing and allegations, they may attack said judgment for fraud, or for error shown. *Morrison v. Morrison,* 25 Wash. 466, 65 Pac. 779; *Ball v. Clothier,* 34 Wash. 299, 75 Pac. 1099. Fraud sufficient to authorize such an attack must clearly appear from the allegations of the petition for vacation, showing not only that such fraud existed, but also that the court was influenced and deceived thereby, and induced to enter a judgment or decree prejudicial to the interests of said infants. Where it is sought to vacate a decree on the ground of error shown, said error must be prejudicial, must clearly appear upon the face of the record in the original proceedings, and must be such error as would have entitled the minor to a reversal of said decree or judgment upon appeal, had he been under no disability at the time of its entry, and in a position to prosecute such appeal. *Webster v. Page,* 54 Iowa 461, 6 N. W. 716."

There can be no doubt that the appellants in this case are privies claiming through Peter Satiacum, and have no greater rights than the minor would have were he now living. It is not claimed, either in the complaint or in the briefs, that the court was induced by fraud to make the finding that Peter Satiacum was of lawful age when he was not, or that the guardian did not act in entire good faith. No acts of fraud are alleged to avoid the orders. No error appears upon the face of the record in the original proceedings. If the court was right in finding that Peter Satiacum was of lawful age, then the conclusion necessarily followed. The evidence upon which that finding was made does not appear upon the record. It follows that, if this were a direct proceeding to review the original order for fraud or error, the ap-

pellants must fail under the rule stated in *Wilson v. Hubbard*, *supra*. It is unnecessary, therefore, to determine whether this is a direct or a collateral attack upon that order.

The principal question in this case is the same as in the final discharge of the guardian, viz., was Peter Satiacum of lawful age at the date thereof. That question was adjudicated by the orders quoted in the guardianship matter, by a court of competent jurisdiction, and must be conclusive upon these appellants until it is vacated, as pointed out in *Wilson v. Hubbard, supra*.

The judgment appealed from must therefore be affirmed.

Fullerton and Root, JJ., concur.

Dunbar, J., concurs in the result.

Hadley, C. J., and Crow, J., took no part.

Rudkin, J. (dissenting)—It seems to me that the doctrine of collateral attack upon which the majority opinion rests is wholly foreign to this case. The order discharging the guardian was neither more nor less than a judgment in a special statutory proceeding between the guardian and his ward. It will be readily conceded that that adjudication cannot be collaterally attacked in any subsequent action between the same parties or their privies. But the defendants in the present action were strangers to that proceeding. As to them it was *res inter alios acta*. Had the court found in the guardianship proceeding that the plaintiffs' ancestor was 15 years of age instead of 21, these defendants would not have been bound by that finding, and for that very reason the plaintiffs in the present action should not now be bound. The rule is thus stated in 23 Cyc. 1238:

"It is a rule that estoppels must be mutual; and therefore a party will not be concluded, against his contention, by a former judgment, unless he could have used it as a protection, or as the foundation of a claim, had the judgment been the other way; and conversely no person can claim the benefit of a judgment as an estoppel on his adversary unless he

would have been prejudiced by a contrary decision of the case."

This is but a statement of the elementary rule that estoppels must be mutual, and is supported by adjudications from all jurisdictions. It is one of the comparatively few questions upon which there is no division of opinion. In *Myers v. County of Johnson*, 14 Iowa 47, the court said:

"It is very apparent that if the case of *Whitaker v. The County of Johnson* had been decided in favor of the latter upon the issue suggested, that the county could not plead such decision in bar of the plaintiff's right to recover in this case, because such a defense would have the effect to conclude the rights of the plaintiff without giving him a day in court. *It is against the whole theory and policy of the law to deny to one party that which would be and must be allowed to his adversary, under like circumstances.*"

In *McDonald & Co. v. Gregory*, 41 Iowa 513, the same court said:

"It is manifest that the judgment, if in favor of defendants, could not have been pleaded as an estoppel against plaintiffs, and, for that reason, being against the defendants, it cannot be pleaded as an estoppel in favor of plaintiffs."

Discussing the same subject, Greenleaf says:

"But to prevent this rule from working injustice, it is held essential that its operation be *mutual*. Both the litigants must be alike concluded, or the proceedings cannot be set up as conclusive upon either." 1 Greenleaf, Evidence (13th ed.), § 524.

Freeman says:

"No party is, as a general rule, bound in a subsequent proceeding by a judgment, unless the adverse party now seeking to secure the benefit of the former adjudication would have been prejudiced by it if it had been determined the other way. 'The operation of estoppels must be mutual. Both the litigants must be alike concluded; or the proceedings cannot be set up as conclusive upon either.' 'It is essential to an estop-

pel that it be mutual, so that the same parties or privies may both be bound and take advantage of it.' 'Nobody can take benefit by a verdict, that had not been prejudiced by it had it gone contrary.' " 1 Freeman, Judgments (4th ed.), § 159.

But, as stated above, the rule is elementary and universal and requires no discussion. The judgment should be reversed.