[No. 10081.   Department One.   August 21, 1912.]

JOHN JORGENSON et al., Appellants, v. J. B. WINTER,
Respondent.[1]

INSANE PERSONS—RESTORATION OF SANITY—DISCHARGE OF GUARD-
IAN—JURISDICTION—NOTICE—ADVERSARY PROCEEDING.   Under Rem. &
Bal. Code, § 1671, providing that when the court shall receive in-
formation that an insane ward has recovered his reason, it shall
immediately inquire into the facts, and discharge the ward if found
to be of sound mind, no notice to the ward is necessary to authorize
a discharge of the guardian, since the court has jurisdiction through
the appointment and qualification of the guardian, and the proceed-
ing is not an adversary proceeding requiring notice.

JUDGMENT — JURISDICTION — PRESUMPTIONS—COLLATERAL ATTACK.
An order discharging a guardian of an insane person by a court
having general jurisdiction, will be presumed to have been regularly
made until the contrary appears, and is conclusive on collateral
attack.

INSANE PERSONS—RESTORATION OF SANITY—CONVEYANCE—MENTAL
CAPACITY.   Where a person who had been adjudged insane was dis-
charged as restored to capacity and his guardian discharged and he
thereupon sold real estate for $2,500, the fact that two days later it
was resold by the purchaser for $4,100 does not indicate that the
sale was invalid for want of mental capacity.

[1]Reported in 125 Pac. 957.

Appeal from a judgment of the superior court for Snohomish county, Bell, J., entered November 22, 1911, upon findings in favor of the defendant, in an action of ejectment, after a trial to the court. Reversed.

*Hathaway & Alston*, for appellants.
*Williamson, Williamson & Freeman*, for respondent.

Gose, J.—This is a suit in ejectment. There was a judgment for the defendant. The plaintiffs have appealed.

The respondent pleaded affirmatively, that he was adjudged insane and committed to the asylum in this state in the month of November, 1908; that it had not since been judicially determined that he has recovered his reason; that at the time he conveyed the property to the appellants' grantor, he was, and for several years had been, incurably insane and incompetent to transact his ordinary business, and that the appellants had knowledge of his mental infirmity at the time they purchased the property. The appellants in their reply traversed the new matter in the answer, and alleged affirmatively that, in February, 1909, in the superior court of Pierce county, an order was entered appointing a guardian of the respondent's estate, upon the ground that he was insane and incompetent to manage his affairs; that the guardian qualified and took possession of the property of his ward; that on the 24th day of January, 1910, the respondent had recovered his reason, and that the said court then entered an order confirming the guardian's report, discharging the guardian, exonerating his bondsmen, and adjudging that the respondent had fully recovered from his mental affliction. The trial court found all the issues in favor of the respondent.

The facts are as follows: The respondent was committed to the asylum on November 2, 1908. On February 6, 1909, a guardian of his estate was appointed. On January 22, 1910, he was paroled, and at the time of the trial in November, 1911, was still at large. On January 24, 1910, an order was entered in the superior court of Pierce county,

discharging the guardian and reciting that the respondent had recovered his reason. On January 26, the respondent gave one Miller written authority to sell the property in controversy for $2,500, and agreed to pay him a commission of five per cent in case of a sale. On February 2, Miller procured a purchaser at the price stated, and on that day the respondent conveyed the property and received the purchase price. Two days later, the purchaser sold and conveyed the property to the appellants for $4,100. The order appointing the guardian recited, that the respondent had property which needed the care and attention of some fit and proper person, and that the respondent was "confined in the hospital for the insane" in this state. None of the orders in the record indicate the degree or character of the respondent's insanity. The report of the guardian alleged that the respondent had been paroled upon the order of the superintendent of the hospital where he was confined, and that there was no necessity for the continuance of the guardianship. There is appended to the report a statement subscribed by the respondent, to the effect that he had examined the account and vouchers, that he approved them, and that he had received from his guardian all personal property belonging to him. The order of discharge recites, that the estate had been fairly and legally administered; that the guardian had turned over to the ward all the personal property belonging to the estate; that the guardian be discharged and his bondsmen exonerated; and that the respondent had "fully recovered from his mental affliction."

The oral testimony is all to the effect that the respondent was competent to manage his business affairs at all times subsequent to his parole. Miller, the man who sold the property, testified that the respondent lived in Tacoma; that he came to his office at Everett and signed the contract authorizing him to make the sale; that the respondent stated that the house was "run down" and needed repairs; that taxes would soon be due; that there were sewer assessments;

that he estimated the total of such expenses and said that the property was not paying, and that he would rather sell it; and that he further said that he did not feel that the city would grow. A Mr. Olson testified that he had known the respondent for ten or twelve years; that just before he made the sale he requested witness to sell the property; that witness asked him what price he wanted, and that the respondent said that, if he would sell it for $2,600, he would pay him a commission, and that he appeared all right mentally. On December 20, 1909, about a month before his parole, the respondent wrote Miller as follows:

"Ft. Steilacoom, Wash., Dec. 20th, 1909.

"Mr. F. J. Miller. Your letter at hand. I am well at present and have been in good health. Work in the Kitchen Department and am quite a heavy weight. I hope to have the pleasure of seeing you soon, only wish I could come to see you on Christmas, but I expect to be at home soon in Tacoma, then I can come and see you, in regard to property, also would be glad to see you very much.

"I wish you a Merry Christmas and a Happy New Year.

"Respt. J. B. Winter."

On February 11, nine days after he made the sale, he again wrote Miller, saying:

"Tacoma, Washington, Feb. 11, 1910.

"Mr. F. J. Miller, Hewitt St., Everett, Wn.

"Dear Sir: Through the recent land deal made by you in disposing of my property in Everett, I have had lots of trouble, and the deal I made is void according to the law. I had no right to make this sale, as I was not fully released from the hospital for the insane at Steilacoom. This property was sold for about one-half its value and the court will say that I must get this property back or get the real value for it. If I dont get it the court will appoint a guardian for me and do it in that way, and I dont want that done. I am under the supervision of the court and under the protection of the state, and I will have to get this matter adjusted right. Yours truly, J. B. Winter."

Our statute in reference to the discharge of one who has

been adjudged insane, Rem. & Bal. Code, § 1671, is as follows:

"Whenever the court shall receive information that such ward has recovered his reason, he shall immediately inquire into the facts, and if he finds that such ward is of sound mind, he shall forthwith discharge such person from care and custody; and the guardian shall immediately settle his accounts and restore to such person all things remaining in his hands belonging or appertaining to such ward."

It will be observed that the statute makes no provision for notice to the ward or to any other person. The respondent, however, contends that the ward must be brought before the court in some manner before it acquires jurisdiction to hear and determine his mental condition. It is elementary law that adversary rights cannot be determined without affording an opportunity to be heard to the party whose rights are to be affected. But the question arises, Is an adjudication that a person has recovered his reason an adversary proceeding? We think not. The appointment and qualification of the guardian gave the court general jurisdiction over the estate of the ward. The jurisdiction continued until the ward recovered his reason, at which time the right to manage the estate by the court or the guardian ceased. *Meeker v. Mettler,* 50 Wash. 473, 97 Pac. 507. The statute contemplates that the court shall conduct such inquiry as it deems proper; that is, inquire into the facts and determine accordingly.

The cases cited by the respondent do not hold that notice to the ward or to his next of kin is jurisdictional, but only that expediency demands that such notice should be given or that the ward be brought before the court during the hearing. Moreover, we can see no reason why a court may not accept the resignation of a guardian, or discharge him upon his own application without notice to the ward. The question of the settlement of the guardian's account is quite a different thing. It is in its very nature an adversary pro-

ceeding, and as such requires a preliminary notice. We think that both the ward and the guardian were legally discharged.

We have assumed in the foregoing discussion that the hearing was had in the absence of the ward. The record is silent upon this question. In the *Meeker* case we held that an adjudication that a ward had attained his majority, he being personally present in court, was conclusive upon a collateral attack. The presumption always is that a court of general jurisdiction has proceeded regularly until the contrary is made to appear, where the subject-matter of the litigation is within its jurisdiction. *State v. Holmes*, 12 Wash. 169, 40 Pac. 735, 41 Pac. 887; *State ex rel. State Ins. Co. v. Superior Court*, 14 Wash. 203, 44 Pac. 131. It will also be presumed that every step necessary to acquire jurisdiction has been taken. 11 Cyc. 691, 692. Where a court of general jurisdiction has jurisdiction of the subject-matter of the action in which the judgment is pronounced, jurisdiction of the parties will be presumed. *Galpin v. Page*, 18 Wall. 350.

"Every presumption not inconsistent with the record is to be indulged in favor of jurisdiction." *Applegate v. Lexington etc. Min. Co.*, 117 U. S. 255.

We conclude that the guardian was legally discharged; that the respondent was under no legal restraint when he executed the deed; and that he was then mentally competent to manage his own business affairs. The fact that the property was sold at an enhanced price a few days later is not an unusual occurrence in real estate transactions. It is common knowledge that the market value of property responds quickly to changing conditions, and that the judgment of men differs widely upon the question of value. The judgment is reversed, with directions to enter a judgment for the appellants.

Parker, Crow, and Chadwick, JJ., concur.