Argued May 27, affirmed June 15, 1915.

## IN RE SNEDDON.

(149 Pac. 527.)

**Insane Persons—Guardianship—Adjudication of Sanity—Effect—Statute.**

1.  Section 3, page 680, Laws of 1913, provides that the county judge of any county, upon being notified in writing that any person, by reason of insanity, is unsafe to be at large, or is suffering from exposure or neglect, shall cause such person to be committed to a hospital for the insane upon a determination of his insanity by the county judge and a physician. Section 1319, L. O. L., provides that the several County Courts shall have power to appoint guardians for the estates of insane persons, idiots and all who are incapable of conducting their own affairs. Section 1342 defines an "insane person" as including every idiot, person not of sound mind, lunatic, and distracted person. Petitioner was committed to a hospital for the insane under Section 3, page 680, Laws of 1913. Guardians were appointed for his estate, and after his discharge from such hospital as improved he was recommitted thereto. From the recommittal order of the County Court he appealed to the Circuit Court, where an inquest before a jury resulted in his discharge as sane, and thereupon he petitioned for the removal of his guardians. *Held* that, since Section 1342, L. O. L., distinguishes between lunatics and persons of unsound mind, the mere fact that an incompetent has been released from an asylum to which he was committed as a lunatic, or unsafe to be at large, is no reason why he should be relieved of guardianship as a person of unsound mind incapable of conducting his own affairs, except upon express averment and adequate proof that he is able to conduct his own affairs, the absence of which from the petition and evidence in the instant case was fatal to the award of relief sought.

> [As to adjudication of insanity as showing want of capacity to execute contracts, make wills, and the like, see note in 140 Am. St. Rep. 346.]

From Coos: JOHN S. COKE, Judge.

Department 2.    Statement by MR. CHIEF JUSTICE MOORE.

This was an application to the County Court of Coos County, Oregon, for the removal of guardians and to require them to account. The facts are that on July 14, 1913, the petitioner, Charles Sneddon, then about 72 years old, was adjudged by that court to be of un-

sound mind, and thereupon he was incarcerated in the state hospital for the insane. Ellen Sneddon, his wife, John B. Sneddon, a son, and Hannah Rees, a daughter, were appointed by that court guardians of his estate and qualified for the trust. The petitioner was soon released from the asylum "as improved," but was again apprehended, charged with insanity, and such proceedings were had that on December 30, 1913, he was by that court ordered to be recommitted. From such order he appealed to the Circuit Court of the State of Oregon for that county, where, a jury having been called, the inquest resulted in his discharge. Thereupon he made the application first hereinbefore mentioned, and based on authenticated records of the verdict of the jury and the decree rendered in accordance therewith, the County Court granted the prayer of the petition. An appeal from such order was taken by the guardians to the Circuit Court, where, at the hearing of the cause, findings of fact and of law were made, and, predicated thereon, the determination of the County Court was reversed. From the latter decree the petitioner appeals to this court. AFFIRMED.

For appellant there was a brief over the names of *Mr. Dwight E. Hodge* and *Mr. Wm. T. Stoll*, with an oral argument by *Mr. Hodge*.

For respondent there was a brief over the names of *Mr. Harry. G. Hoy* and *Mr. I. N. Miller*, with an oral argument by *Mr. Hoy*.

Opinion by MR. CHIEF JUSTICE MOORE.

Section 3 of Chapter 342, Laws Or. 1913, reads:

"The county judge of any county in this state, upon being notified in writing that any person by reason of

insanity is unsafe to be at large or is suffering from exposure or neglect, shall cause such person to be brought before him at such time and place as he may direct, and shall also cause to appear one or more competent physicians who shall proceed to examine the said person as to his mental condition. Should the said examining physician find, and certify under oath, that said person is insane, and the said county judge be of the same opinion, he shall order such insane persons committed to the proper state hospital for the insane.''

In conformity with this clause of the act, Charles Sneddon was duly adjudged insane and incarcerated in the asylum. The statute referred to does not contain any provision for the appointment of a guardian for an insane person.

''The several County Courts, in their respective counties in this state, shall have power to appoint guardians to take care, custody, and management of the estates, real and personal, of all insane persons, idiots, and all who are incapable of conducting their own affairs, and the maintenance of their families, and the education of their children'': Section 1319, L. O. L.

Another clause of the Code, as far as deemed material herein, reads:

''The words 'insane person' are intended to include every idiot, every person not of sound mind, every lunatic, and distracted person'': Section 1342, L. O. L.

The application to the County Court for the aid sought was supplemented by the joint affidavit of the petitioner and his son Hugh Sneddon. Their sworn statement in writing is to the effect that since the appointment of the guardians Charles Sneddon had been discharged from the hospital for the insane ''as improved''; that after his return to Coos County he was again charged with lunacy, and upon an inquest

before the County Court he was found to be insane and ordered to be recommitted; that from such order he took an appeal to the Circuit Court, and at the hearing of the cause the jury found him to be sane, whereupon he was discharged. The motion referred to is addressed to the guardians, and contains a statement as follows:

"This application will be heard and based upon the files and records in this case, also an affidavit by said Charles Sneddon and Hugh Sneddon, a copy of which is hereby served upon you, the original of which is on file in this court."

The transcript before us shows that, pursuant to the notice so served, Walter Sneddon, a son of the petitioner, filed in the County Court, on March 12, 1914, an affidavit to the effect that for more than ten years prior thereto he had been living in the State of Washington; that he secured his father's release from the asylum, taking him to Portland, and accompanying him in that city to a steamer which he boarded for Marshfield, Oregon. Referring to this parent at that time the witness deposed:

"He was clearly suffering from delusions of persecution, and was bent upon employing attorneys and involving himself and his estate in expensive litigation without any sane policy in said matters; that he was possessed with the idea that certain persons were trying to steal his real property or to rob and defraud him out of the same."

The affiant further states that upon visiting his home February 26, 1914, he had on several occasions conversed with his father, who was not competent to transact his own business, but was a proper subject for guardianship of his person and estate. Alluding

to the condition of the petitioner when the affidavit was made, the affiant further says:

"He is in no way improved at this time, so far as I can observe."

The joint affidavit of Ellen Sneddon, the wife of the petitioner, Charles Sneddon, Jr., Jennie Bedford, Hannah Rees, John B. Sneddon and William Sneddon, filed in the County Court March 12, 1914, is practically to the same effect as the sworn written statement of Walter Sneddon. From this affidavit of Mrs. Sneddon and others, who constitute the entire family, except the petitioner, Hugh Sneddon, and his brother, Walter, excerpts will be taken, to wit:

"That we are each and all familiar with the mental condition of the said Charles Sneddon as indicated by his acts and conduct; that it appears from his said acts and conduct that he is incapable of conducting his own affairs; that the said Charles Sneddon is, and for more than two years last past has been, the subject of fixed delusions of persecution; that he is strongly of the opinion that certain of the prominent citizens of Coos County, Oregon, are seeking to defraud him and his wife, the said Ellen Sneddon, and each of them, out of their property; * * that he has repeatedly sought to have different persons arrested and indicted for alleged attempts to steal his property and the property of his wife, the said Ellen Sneddon; that he has made several trips to Portland and other points to confer with the departments of justice and surveying of the United States located at those points, for the purpose of securing indictments and procuring alleged evidence as to surveys and to visit and appeal to the Governor of the state for aid in his imaginary difficulties over title to real property in Coos County; that, if permitted to go at large without a guardian or guardians, the said Charles Sneddon will dissipate his estate and come to want, and will continue to keep the members of his family in a state of anxiety and un-

certainty over his whereabouts and personal welfare; that his present condition has been growing on him for some years, and is, so we are informed and believe, a condition that cannot be the subject of improvement, owing to his advanced years and the peculiar nature of his mental disorders.''

A written stipulation made March 12, 1914, was signed by counsel for the petitioner and the attorneys for the guardians, and is to the effect that, if certain named physicians who have charge of and are employed in the hospital for the insane at Salem, Oregon, were present, each would testify as set forth in a letter written by him in relation to the mental condition of Charles Sneddon, which letters are made a part of the agreement. No objection was made by the petitioner's counsel to the form of proof offered, but only that the letters were incompetent, irrelevant and immaterial. As the communications referred to tend to substantiate the same state of the patient's mind, only the letter of Dr. Steiner, the superintendent in charge of the asylum at Salem, Oregon, a physician of great learning and large experience in the treatment of mental diseases, will be set forth. This letter was written to the petitioner's counsel, and is as follows:

"Wm. T. Stoll, Atty. at Law, Marshfield, Oregon—

"Dear Sir: In reply to your letter of February 20, will say that we could not intelligently give an opinion as to the capacity of Chas. Sneddon, since he left this hospital. Will say to you however, at the time he left here we felt as though he was sufficiently recovered that he could be cared for at home with but little trouble, and as a matter of fact did not belong in a place of this kind as his insanity was not considered in any way of a dangerous character. When he came here he harbored delusions of persecution and retained them when he left. He was unreasonable in many of his views, but on the whole was a kindly disposed

gentleman, and we thought well of him. As to his present condition, I know nothing and have no interest in it whatsoever, as he is discharged from this place and not within our care.

"Allow us to quote an excerpt from the patient's history which is a permanent record at this institution, dated August 4, 1912: 'Has delusions of persecution, believing his neighbors and various people are plotting against him; his ideas are very much fixed; he is headstrong, and he believes that he has been trapped into the institution and demands his release immediately; his mental state is due to senility,' Other excerpts are as follows: October 18, 1912: 'Mental condition somewhat childlike, emotional and simple. Diagnosis of his mental state is senility with possible delusions, paranoidal in type.' October 20, 1913, written by an attendant upon whose ward he was confined: 'He is getting quite childlike.' October 13, 1913: 'Patient is quite tidy, has a good appetite, and sleeps quite well. He suffers from delusions of persecution.'

"Naturally the patient in consideration is very earnest in his views, and would make a good impression upon men not versed in the examination of one's mental state. They would not know how to begin the examination, nor how to conduct one in a way necessary to bring out the defects present, and unless the patient has active delusions of persecution at the time of the mental examination, and was apparently disturbed in mind, one could easily see how a well-meaning jury composed of laymen could misinterpret the actual findings of such a case and render a verdict of the patient being sane.

"It is a notorious fact that after a patient has been confined in an institution of this sort and learns what his ideas are that are looked upon as being delusions, futurely he is shrewd enough to keep those ideas closely guarded, and it is with much difficulty and continued observation of such cases that the real facts are learned.                    Yours truly,

"R. E. LEE STEINER,

"Superintendent."

In considering these matters an order was made
March 14, 1914, by the County Court which states that:

"The court, after hearing the arguments of counsel
and examining the records and files in the cause, also
examining the verdict of the jury in the Circuit Court,
* * in which verdict it was found that said Charles
Sneddon was sane, finds that from the verdict of said
jury that said Charles Sneddon was adjudged by the
Circuit Court * * to be sane, and that he is capable
of attending to his own affairs, and that the or-
der heretofore made appointing John B. Sneddon,
Ellen Sneddon, and Hannah Rees guardians be and
the same is hereby revoked and held for naught, and
said guardians be required to settle with the said
Charles Sneddon or file an account in this court of
their accounts as such guardians, and after said ac-
count has been approved, and they have filed receipts
for all sums of money received by them, that the said
guardians be discharged."

On appeal from that order the Circuit Court, after
hearing the cause, made findings of fact as follows:

(1) "That the County Court based its order dis-
charging the guardians solely upon the judgment in
the above-entitled court in a certain case wherein the
above-named Charles Sneddon was tried in a pro-
ceeding under Chapter 342, General Laws of 1913,
whereby it was sought to have him committed to the
state hospital for the insane, by which judgment he
was found 'sane,' there being no other evidence offered
in the County Court upon which the said order appealed
from could have been made."

The second finding of fact is in the nature of a con-
clusion of law. It compares Chapter 342, Gen. Laws
Or. 1913, with Sections 1319 and 1342, L. O. L., herein-
before quoted, and states that those provisions are
separate, and that the phrase "insane persons," as
used in the act of 1913, is entirely distinct from the

meaning of such words as defined and employed in the other sections of the Code. Based on such findings, conclusions of law were deduced as follows:

"(1) That the County Court erred in making the order discharging the guardians of the said Charles Sneddon, and the order appealed from should be reversed; (2) that the application of the said Charles Sneddon to have his guardians discharged should be denied."

It will be remembered that Section 1319, L. O. L., empowers the County Court of any county to appoint guardians to take care, custody and management of the estates of all insane persons, "and all who are incapable of conducting their own affairs." The petition of Mrs. Sneddon and four of her children, filed in the County Court of Coos County, Oregon, August 19, 1913, for the appointment of guardians, and pursuant to which the order prayed for was granted, states that Charles Sneddon had been adjudged insane and was then confined in the state asylum, and that he "is totally incapable of transacting his ordinary business," thereby disclosing that the application reasonably conforms to the requirement of the statute. Neither in the motion filed in that court to have the guardians discharged after the jury had determined Charles Sneddon to be sane nor in the joint supplemental affidavit made by him and his son Hugh is it stated that the petitioner is capable of conducting his own affairs.

It will be kept in mind that Section 1342, L. O. L., defines an "insane person" to include every person not of sound mind, every lunatic, and distracted person. Section 3 of Chapter 342, Gen. Laws Or. 1913, authorizes a County Court, when notified in writing that any person, by reason of insanity, "is unsafe to be at large or is suffering from exposure or neglect,"

to cause an inquest to be held to determine the matter. Construing these statutes together, it will be seen that degrees of mental weakness are recognized, and it is only when it satisfactorily appears to the County Court that a person charged with insanity is unsafe to be at large or is suffering from exposure or neglect that a commitment to the hospital for the insane is authorized. After Charles Sneddon was released from custody and again apprehended, the County Court, in order to acquire jurisdiction of the cause, must have been notified in writing that by reason of his insanity he was either unsafe to be at large or was suffering from exposure or neglect. When it was determined that he should be recommitted to the asylum, the County Court must necessarily have found the averments of the petition to be true. Upon appeal from that order when the jury at an inquest found he was sane, the Circuit Court, sitting as a chancellor, accepted the advice thus sought, and thereupon discharged the petitioner. When a person charged with lunacy is adjudged to be sane and discharged, it might ordinarily be presumed that such determination conclusively establishes the fact that he is not afflicted with mental weakness or exaltation in any degree, and, since it is not usually essential to allege any fact which the law will presume, it was not necessary to aver in the petition for a discharge of the guardians that the ward was capable of conducting his own affairs. As Section 1342, L. O. L., makes a distinction between lunatics and persons of unsound mind, the latter class should not be relieved of guardianship, when regularly appointed, except upon an express averment and adequate proof that they are capable of conducting their own affairs. No averment to that effect having been made nor proof offered in relation thereto on behalf

of the petitioner, but evidence to the contrary having been submitted by the guardians, the petition did not state facts sufficient to entitle an award of the relief granted, and too much importance was attached by the County Court to the verdict and decree of the Circuit Court.

It follows that the decree which has been brought up for review should be affirmed; and it is so ordered.

AFFIRMED.

MR. JUSTICE BEAN, MR. JUSTICE EAKIN and MR. JUSTICE HARRIS concur.