## In re HOWARD F. STREEPER.

[Decided November 7th, 1921.]

1. Where, on appeal, a decree in chancery has been affirmed with modifications,. the decree to be entered in chancery on the *remittitur*, modifying or amending the original decree in such manner as to accomplish the directions of the appellate decree, may provide for such amendment or modification in words at length or in other special form, but the usual practice is to provide that the appellate decree be made the decree of the court of chancery, and this should not ordinarily be departed from.

2. *Habeas corpus* proceedings, looking to the discharge, on the ground of his present sanity, of a person committed to the state hospital as insane, has no effect upon or relation to lunacy commission proceedings resulting from the appointment of a guardian for the lunatic; in the one proceeding the question is whether or not such person is sufficiently sane to render his further confinement unjustifiable; in the other it is whether or not he is sufficiently sane to be able to manage himself and his affairs

3. The discharge of such a patient on such *habeas corpus* proceedings does not of itself operate to terminate such guardianship; nor can any order terminating such guardianship be made in such *habeas corpus* proceedings; the termination of such guardianship can only be accomplished through independent proceedings.

On *habeas corpus.* On motion for decree on *remittitur.*

*Mr. Powell K. Martin* and *Messrs. Wescott & Weaver,* for the petitioner.

*Mr. John Boyd Avis,* for the respondent.

BUCHANAN, V. C.

The petitioner, Howard F. Streeper, was confined in the New Jersey State Hospital as an insane person. He had also been adjudicated a lunatic, in the usual lunacy commission proceedings in this court; and upon that decree, a guardian had been appointed for him by the Gloucester orphans court, pursuant to section 1 of the act concerning idiots and lunatics. *2 Comp. Stat. p. 2782.*

Later, believing himself sane, he sought to be discharged from the state hospital, and to that end obtained the issuance of a writ of *habeas corpus* from this court, under section 13 of the statute relating to lunatic asylums, in effect at the time of his commitment, *P. L. 1913 ch. 250*—(the present statute, *P. L. 1916 ch. 94 § 36,* is similar)—and the act (*P. L. 1898 p. 231*) dealing with writs of *habeas corpus* in respect of patients in hospitals for the insane. Both statutes provide that on such *habeas corpus* proceedings the patient shall not be discharged unless found to be "sane." The statute concerning lunatic asylums (*supra*), however, by section 10 thereof (likewise the present statute, *P. L. 1916 ch. 94 § 33*), excludes idiots, imbeciles and feebleminded persons from the category of insane persons under the meaning of that act, the necessary inference being that such persons are to be deemed sane (since, if one is not insane, he must be sane) under that act and may be discharged on *habeas corpus.*

On the hearing on the writ in question this court found the petitioner mentally affected, but not insane under the meaning of the act referred to. The actual adjudication in the decree or order was that he "is now a person of feeble mind but not insane under the provisions of the act," &c., and the order thereupon proceeded to direct his discharge from imprisonment in the state

hospital, adding that he "be remanded to the custody of Lewis Starr, Esquire, his duly-appointed guardian."

From this order or decree the petitioner appealed, alleging the same to be erroneous in adjudging petitioner to be of feeble mind and remanding him to the custody of the guardian aforesaid. The court of errors and appeals affirmed the decree of this court, but with a modification, to wit, the elimination of the clause remanding him to the custody of his guardian. *Vide* the opinion, *114 Atl. Rep. 409*.

On the coming down of the *remittitur,* the petitioner has now applied for the entry of the decree in this court thereon and presented a draft of such decree. This I decline to advise; and I likewise decline to advise a decree in any of the several alternative forms suggested by petitioner's counsel orally during the course of the hearing on this motion, for reasons which I shall proceed briefly to explain.

On a decree of affirmance by the court of errors and appeals, in the ordinary case no action thereon by this court is necessary —the original decree of this court remains in full force and effect. On a decree of reversal the appellate decree does not in and of itself alter the original chancery decree, but it becomes the duty of this court to vacate its original decree and substitute therefor a decree comprising such adjudications and decretal provisions as conform to the directions of the decree of the appellate tribunal. The practice is to enter a decree "that the decree of the court of errors and appeals be and the same is hereby made the decree of this court." This practice commends itself to reason on two grounds—*first,* because it obviates, as far as possible, any risk of misinterpretation by this court of the directions of the court above and consequent failure to conform thereto (leaving such possibility open only in cases where further proceedings are to be had in this court subsequent to the entry of the decree on the *remittitur*), and *second,* because it leaves the appellate court (by itself and the appellate counsel as its officers) the responsibility of framing its decree with sufficient explicitness to accomplish the carrying into effect of those decretal provisions which in its opinion the court of chancery should have made, and should now make, in the place and stead

of those originally made, a responsibility which it seems not unreasonable that the appellate tribunal should thus assume.

On a decree of affirmance with modifications, the course to be pursued by this court is to enter a decree amending or modifying its original decree in such manner and with respect to such particulars as the appellate decree directs, leaving the original decree otherwise undisturbed. In the present case the modification or amendment to be accomplished in the original decree would seem to be the vacating or elimination of that portion thereof which reads, "and is remanded to the custody of Lewis Starr, Esquire, his duly-appointed guardian;" inasmuch as the *remittitur* shows the appellate decree to be "that the decree of the chancellor be affirmed, with costs, but modified in accordance with the opinion of this honorable court, to the end that the said Howard F. Streeper shall receive his unconditional discharge." The necessary amendment or modification, doubtless, might be done by the entry of a decree by this court in words, at length, or in other special form. The usual practice, however, is for a decree that the appellate decree "be and the same is hereby made the decree of this court," and the reasoning hereinbefore referred to would seem to support with equal cogency the propriety of such a course as well in cases of modification as in cases of reversal. I see no reason to depart therefrom in the present instance; on the contrary, the circumstances serve to confirm the advisability of adhering thereto.

Petitioner, in the language of the operative portion of the draft of decree submitted by him, asks the court to "order, adjudge and decree that the said Howard F. Streeper is a sane person and not of unsound mind, and is entitled to receive his unconditional discharge from the state hospital." In view of the fact that this court found in fact that Streeper was feeble minded, and embodied such finding in the final decree, and that the finding and decree were specifically appealed from and affirmed, additional comment seems unnecessary. One or two of the modifications orally suggested by counsel were open to the same objections.

Other suggested forms of the decree were in terms which I cannot now specifically recall, but were, in substance, that the

decree should provide, in effect, for the termination of Mr. Starr's guardianship, or the discharge of Streeper (and, I think, his property) from the care or custody of such guardian. Such a provision (even if reference to petitioner's property were omitted) would be improper for two reasons.

In the first place, the opinion of the court of errors and appeals points out that the proceedings on *habeas corpus* for the discharge of an inmate of the hospital for the insane, on the ground that he is not now insane, are purely statutory, and that the jurisdiction, power and authority of this court in such proceedings are likewise purely statutory and include only (since the statutory grant of power extends no further) the determination of the patient's sanity or insanity and the discharge of the patient from the confinement complained of, if he be found sane; hence, that the provision in the decree remanding petitioner (the opinion speaks of the decree as "committing" him, whereas the decree uses the word "remanded") to the custody of his guardian was without statutory warrant or authority and therefore erroneous. It must, then, be apparent that any provision purporting or attempting to terminate the guardianship or the guardian's custody or control over petitioner (supposing the court otherwise inclined to make such provision) would be equally without warrant or authority and erroneous.

It may be added that there is no indication whatever, in either the opinion or the decree of the court of errors and appeals, of any intention to express or intimate that the decree on the *remittitur* should direct the termination of the guardianship or the guardian's control. The opinion, as I have said, indicates precisely the contrary. So, also, does the decree, for reference to the record in that court shows that an amended decree was entered therein two weeks after the original (although for some reason the amended decree has never been certified to this court). The amendment consists (only) in the addition, after the words "shall receive his unconditional discharge," of the words "from the state hospital." The addition of this limiting clause would seem to denote an intent that the decree should not be construed as directing his discharge from the care and custody of his guardian.

Neither is there anything in the opinion indicative of belief or decision on the part of that court that the effect of the chancery decree with the direction of remand to the guardian eliminated, would be in anywise to deprive the guardian of, or discharge him from, the power or the duty of the care and safekeeping of the petitioner imposed upon such guardian by the statute (*2 Comp. Stat. p. 2781 § 1*) and the order appointing him. It would seem clear that no such effect can so result, for this proceeding looking to petitioner's discharge from confinement is entirely separate and distinct from any proceeding looking to the appointment or discharge of a guardian; and the issues in the two proceedings are absolutely different.

In the second place, because of this fact just mentioned, of the difference between the issues in the two kinds of proceedings, this court would not, even if it had the power in this proceeding, include such a provision in its final decree as originally entered (to say nothing of the situation after appeal and *remittitur*). The hearing was not had upon the issues which would be involved in a question of guardianship. The sole issue raised by petitioner, and the sole issue tried, was that of his mental condition with regard to the justification of his continued restraint by confinement in the hospital. The difference between this issue and an issue as to whether or not his mental condition is such as to justify the continuance of a guardianship of his person and property is apparent. It would seem entirely clear that a man may be mentally afflicted in such nature or degree as to render him incapable of managing himself or his affairs, and hence to require the appointment of a guardian for his person and property, and still not be mentally afflicted in such nature or degree as to warrant or require his confinement in the state hospital. To put an extreme illustration, a hopeless idiot or imbecile cannot be so confined, under the Asylum act (*P. L. 1916 ch. 94*), since, by section 33, he is not to be deemed insane, and an adjudication of insanity is a prerequisite to his commitment —sections 15, 18 (and so also in the prior act of 1913).

Surely, then, evidence taken on an inquiry aimed solely at determining whether or not the man's mental condition is such as to justify his confinement in an institution can afford no

proper basis for a determination or adjudication as to whether or not his mental condition is such as to justify the continuance of a guardianship, particularly when the finding on the inquiry actually had is that he is in some degree mentally affected.

The object which petitioner desires to accomplish, namely, the termination of the guardianship, must be sought by means of independent proceedings.