[Nos. 28482, 28484. Department Two. October 22, 1941.]

*In the Matter of the Guardianship of* GEORGE PFEIFFER,
*a Mentally Incompetent Person.*

*In the Matter of the Insanity of* GEORGE PFEIFFER.

GEORGE PFEIFFER, *Respondent,* v. BLANCHE E. PFEIFFER,
*Individually and as Guardian, Appellant.*[1]

[1]Reported in 118 P. (2d) 158.

*Falknor, Emory & Howe,* for appellant.

*Geo. H. Crandell,* for respondent.

JEFFERS, J.—George Pfeiffer was, by the superior court for King county, in cause No. 11062, on August 18, 1938, adjudged insane and committed to the Northern State Hospital for the Insane. On September 21, 1938, Blanche E. Pfeiffer, wife of George Pfeiffer, was, by the superior court for King county, in cause No. 70934, "appointed guardian of the person and estate of George Pfeiffer, a mentally incompetent person." Thereafter the guardian duly qualified, and has at all times since been and is now the duly appointed, qualified, and acting guardian of such estate.

On December 2, 1940, George Pfeiffer filed in the insanity proceedings a petition wherein he alleged that, on December 22, 1939, he was paroled from the hospital as improved, and that, thereafter and on August 22, 1940, he was discharged from parole as further improved. It is further alleged in the petition that, since his discharge from parole, petitioner has fully re-

covered and is now sane and should be so adjudged. Petitioner further alleged that he has spent most of his life in the business of buying and selling stock, and that, to engage in a small way in such business, he needs at least $2,500 in cash. Petitioner prayed for an order of the court

". . . for full and complete discharge as an insane person and finding that your petitioner is sane, or in the alternative for an order finding that your petitioner is fully recovered to warrant his engaging in the business of buying and selling stock and that at least $2500.00 be set aside under the control of your petitioner to engage in said business."

On the same day, the court, in the insanity proceedings, issued a citation to the guardian, Blanche E. Pfeiffer, requiring her to appear at the hearing on the petition of George Pfeiffer, which was to be had on December 10, 1940.

Apparently no hearing was held on December 10th, for on December 13th the guardian appeared in the insanity proceedings and served upon counsel for George Pfeiffer and filed in the cause a notice that on December 16, 1940, the guardian would ask the court for an order directing a medical examination of George Pfeiffer, and the appointment of physicians to perform such examination, for the purpose of determining the mental competency of Mr. Pfeiffer. On December 17th, the court ordered a medical examination of Mr. Pfeiffer, to be held December 18th, such examination to be made by Dr. George E. Price, selected by the guardian, and Dr. N. K. Rickles, selected by petitioner, such doctors to testify as to the mental competency of Mr. Pfeiffer, at a hearing to be held on December 20, 1940.

On December 20, 1940, the guardian filed in the insanity proceedings an answer to the petition of George

Pfeiffer, in which it was alleged, among other things, that no proceedings were pending in the guardianship matter for termination of such guardianship or the removal of the guardian; that the type of insanity with which George Pfeiffer was afflicted was "general paresis," that he was not sufficiently recovered at that time to handle funds, and that placing funds in the hands of Mr. Pfeiffer would result in a waste and depletion of the guardianship estate.

On December 20, 1940, a hearing was had on the petition of Mr. Pfeiffer, at which time the two doctors were sworn and testified, and, as appears from exhibit three filed in the cause, it was the opinion of the doctors that Mr. Pfeiffer was not competent to manage his affairs, and that the guardianship should continue. Thereafter, on January 6, 1941, the court entered an order denying the petition of Mr. Pfeiffer.

Counsel for Mr. Pfeiffer, on May 10, 1941, filed a motion in the insanity proceedings, asking for an order restoring George Pfeiffer to his full legal competency and soundness and adjudging him to be sane, with legal capacity to transact all his own business. Counsel further asked for an order requiring the guardian to make a full and complete accounting of all money and property received by her as guardian. This motion was supported by the affidavit of Mr. Crandell, to the effect that, on May 6, 1941, upon an examination held at the hospital at Sedro Woolley, George Pfeiffer was completely discharged as recovered. Attached to the affidavit was the following document:

"Please note *change* in *condition* of discharge, as *of this date.*

"NORTHERN STATE HOSPITAL

"Office of the Superintendent    No. 11062

"Sedro-Woolley, Wash. May 6, 1941

"This is to inform you of the discharge, from parole, *recovered,* on Aug. 22, 1940, of George Pfeiffer No. 9190,

who was admitted August 19, 1938, by an order of the superior court of King No. 11062 county.
c. c. to DFBB
Mr. Geo. Pfeiffer (pt)

"Very truly yours,
"J. W. DOUGHTY, Superintendent."

On May 10, 1941, without notice to the guardian, and based upon the above certificate or document from J. W. Doughty, superintendent of the hospital, the court entered the following order:

"It is hereby ordered, adjudged and decreed that the said George Pfeiffer is adjudged to be of sound mind and declared to be fully restored to his mental competency, and that he is fully competent to transact any and all affairs in his own legal capacity.

"It is further ordered, adjudged and decreed that he be discharged from care and custody.

"It is further ordered that [the guardian appear] on the 22 day of May, 1941, at the County-City Building, in Seattle, Room No. 2, at the hour of 9:30 A. M., and then and there make a full and complete accounting of all of the properties and money had and received by her as said guardian, and the disposition of the same, and then and there make a full and complete report, and it is further ordered that upon the approval of the said report by the court the said guardian will be discharged and the bond exonerated.

"It is further ordered that a copy of this order shall be served forthwith upon the said guardian or her attorney of record."

May 13, 1941, the guardian appeared in the insanity proceedings and moved to vacate the order of May 10th above referred to, in so far as it affected or purported to affect the guardian or the guardianship proceedings, pending before the court in cause No. 70934. This motion was supported by the affidavit of John N. Riese, one of counsel for the guardian, alleging what had occurred in the insanity proceedings (cause No. 11062), as shown by the records, and further alleging

that no notice of the hearing of May 10th had been given to the guardian or her attorneys.

Apparently after the filing of the motion last above referred to, the court became doubtful as to whether the document received from the superintendent of the hospital, upon which the order of May 10th was based, was a complete discharge, and on the request of Mr. Crandell, the superintendent sent to Mr. Crandell the following certificate:

"May 16th, 1941.

"To Whom it May Concern This is to certify that George Pfeiffer (Patient No. 9190) was examined at the Northern State Hospital, where he had been under treatment, and was found to be recovered from his psychosis as of May 6th, 1941; and a superior court notice to this effect was furnished the superior court of King county and a copy to the state department of finance, budget and business, Olympia, Washington, in accordance with the statute.

"J. W. Doughty,

"J. W. Doughty, M. C., Superintendent

"Subscribed and sworn to before me a Notary Public this day, May 16th, 1941.

"Pearl I. Blackburn, Notary Public in and for the State of Washington residing at Sedro-Woolley."

This certificate was filed May 21, 1941. May 22nd following, the court entered an order denying the motion of the guardian to vacate the order of May 10th.

The guardian has appealed from the order of May 10, 1941, and from the order of May 22, 1941, denying the motion of the guardian to vacate the order of May 10th.

On May 22, 1941, Mr. Crandell, as counsel for Mr. Pfeiffer, filed a motion in the guardianship proceedings, to require the guardian to make a full and complete accounting, at a time to be fixed by the court, for all property coming into her possession as such

guardian. Supporting this motion was an affidavit by Mr. Crandell, to the effect that George Pfeiffer was fully recovered and was entitled to the return of his estate; that his recovery was evidenced by the certificate and letter executed by the superintendent of the Northern State Hospital, above referred to, together with the order of the superior court in the insanity proceedings, adjudging and decreeing Mr. Pfeiffer to be of sound mind and restoring him to his legal mental competency; and that, by virtue of the premises, Mr. Pfeiffer was entitled to a full and complete accounting and discharge of the guardian.

Pursuant to the request of Mr. Crandell, and based upon the motion hereinbefore referred to and the letter and certificate of the superintendent of the hospital, the court, on May 22, 1941, entered in the guardianship proceedings an order, the material part of which is as follows:

"It is hereby ordered that the guardian be and she is hereby ordered to appear on the 5th day of June, 1941, at the County-City Building in the city of Seattle, Room No. 2 at the hour of 9:30 A. M., and then and there make a complete and full accounting of all of the properties and money received by her belonging to the said George Pfeiffer.

"It is further ordered that the guardian shall deliver or cause to be delivered to Geo. H. Crandell, attorney for George Pfeiffer, a written accounting and report not later than the — day of —, 1941, at the office of Geo. H. Crandell, 1702 Smith Tower, Seattle, Washington. *Guardian's exception to each & every part of the above order is hereby noted.*"

The guardian has appealed from this order of May 22, 1941.

Error is based upon the entry of the order of May 10, 1941, in the insanity proceedings; upon the refusal of the court to vacate that order; and upon the entry of

the order of May 22, 1941, in the guardianship proceedings.

There is no statement of facts in this case, the parties relying upon the record as herein set out, as shown by the transcripts.

We are met at the threshold of this appeal by two motions by respondent, one to dismiss the appeal in case No. 28484 (the insanity proceedings), the other to dismiss the appeal in case No. 28482 (the guardianship proceedings). By stipulation these appeals were consolidated.

In this opinion we have considered the petition for the appointment of a guardian, which this court permitted to be filed subsequent to the argument, and also the photostatic copies of two certificates by the superintendent of the hospital at Sedro Woolley, which certificates were apparently sent to the clerk of the superior court for King county, pursuant to statute.

Respondent contends that no appeal will lie from the order of May 10th in the insanity proceedings, for the reason that appellant has no appealable interest in the order restoring respondent his competency, citing 2 R. C. L. 49, § 31; *State ex rel. Biddle v. Superior Court*, 63 Wash. 312, 115 Pac. 307; and *Jorgenson v. Winter*, 69 Wash. 573, 125 Pac. 957, to sustain his position. The quotation from R. C. L. states:

"As a general rule, any party or privy to an action who is aggrieved by a judgment or decree may sue out a writ of error or appeal."

No fault can be found with that general statement, but in our opinion the citation is not helpful in this case, when used to support the contention that appellant was not a party to the insanity proceedings, and had no appealable interest in the order of May 10th.

We might at this point call attention to the same

volume of R. C. L., p. 50, § 32, wherein the following statement is made:

"The term 'parties' as used in the rule just stated is not restricted to those named in the original pleadings nor even to those named in the final judgment or decree. At various stages of the proceedings persons who were not original parties thereto may be brought in or may come in on their own motion, for the purpose of seeking or being subjected to some relief, and when such is the case, they become parties, at least to the proceeding affecting them, and, if the order made against them is otherwise appealable, they may appeal."

Again, the same volume of R. C. L., p. 55, § 35, states:

"As a general rule, a guardian has such an interest in a judgment or decree affecting the estate of his ward as entitles him to appeal therefrom."

The *Biddle* case, *supra,* holds that a trustee in bankruptcy, in possession of real estate at the time of a mortgage foreclosure, who was not made a party to such proceeding, may be brought into court on a writ of assistance, and that he thereby becomes a party to the action and may appeal from the order granting the writ.

The *Jorgenson* case, *supra,* decided in 1912, involved § 1671, Rem. & Bal. Code, which provided:

"Whenever the court shall receive information that such ward has recovered his reason, he shall immediately inquire into the facts, and if he finds that such ward is of sound mind, he shall forthwith discharge such person from care and custody; and the guardian shall immediately settle his accounts and restore to such person all things remaining in his hands belonging or appertaining to such ward."

This section was repealed by § 223, Laws of 1917, chapter 156, p. 707, so that at this time we have no statute which authorizes the superior court, after a

person has been adjudged insane and committed to a state hospital, to conduct a hearing for the purpose of determining whether or not such person has become sane. In making this statement, we have in mind the last part of Rem. Rev. Stat., § 6950 [P. C. § 2843], which provides:

"Whenever it shall be made to appear to the judge of the superior court of any county that any paroled patient found in such county has become unsafe to be at large, such judge shall order such patient returned to the hospital from which he was paroled. . . ."

It is clear that any proceeding conducted under and by virtue of the above statute would be only for the purpose of determining whether or not such patient should be returned to the hospital as dangerous to be at large, and that it does not purport to authorize any final determination of the sanity of such patient.

The only statute we have been able to discover relative to determining one to be sane after commitment, is the first part of Rem. Rev. Stat., § 6950, which provides:

"Whenever in the judgment of the superintendent of any hospital for the insane any person in his charge shall have so far recovered as to make it safe for such patient and for the public to allow him to be at large, the superintendent may parole such patient and allow him to leave such hospital, and whenever in the judgment of the superintendent any patient under his charge has become sane, mentally responsible and probably free from danger of relapse or recurrence of mental unsoundness, the superintendent shall discharge such patient from the hospital."

When a patient has been paroled and whenever in the judgment of the superintendent of the hospital any patient has become sane and the superintendent has discharged such patient from the hospital, the superintendent shall immediately certify the facts to the

clerk of the superior court of the county from which the patient was committed. Rem. Rev. Stat., § 6951 [P. C. § 2844]. This statute was apparently complied with by the superintendent.

While, as we have stated, the statutes do not seem to contemplate any proceeding by the court in an insanity proceeding to determine whether or not the patient has been restored to sanity, we are not unmindful of the case of *State ex rel. Martin v. Superior Court,* 101 Wash. 81, 172 Pac. 257, 4 A. L. R. 572, decided after the repeal of the statute referred to in the *Jorgenson* case, *supra.* We held in the *Martin* case that a court of equity has inherent power to discharge or commit an insane person; that the court has this power even though the power is also bestowed upon another; and that a court of equity has this power independent of statute.

Considering, then, the statutes and the holding in the *Martin* case, we are of the opinion the court was authorized and had jurisdiction to enter an order declaring respondent sane, and that such order could be based upon a certificate from the superintendent of the hospital wherein the patient was confined; that it is not necessary that a guardian be given notice of such a hearing; and that a guardian has no appealable interest in such an order.

However, in the instant case, the court did not stop with merely declaring that the patient had been restored to sanity, but by its order of May 10, 1941, entered what in our opinion purports to be a final order directly affecting the guardian and the guardianship proceedings, in that the order declared Mr. Pfeiffer fully restored to his mental competency, and fully competent to transact any and all of his affairs, and that he be discharged from care and custody; that the guardian be required to make a full and complete ac-

counting; and that upon such accounting being made and its approval by the court, the guardian should be discharged. In our opinion, this order purports to be a final and binding order upon the guardian, and purports to be a final adjudication as to the mental competency of Mr. Pfeiffer, and did not anticipate any other or further hearing in the guardianship proceeding, or elsewhere, to determine this matter.

The guardian was brought into the insanity proceedings first by a court citation, and after the order of May 10th was entered, she appeared and was recognized as a party to those proceedings. We are satisfied that the guardian has an appealable interest in that part of the order of May 10th purporting to be a final order and directly affecting the guardianship proceedings and the guardian. The motion to dismiss the appeal from the order of May 10, 1941, entered in the insanity proceedings (No. 28484), will therefore be denied.

In view of the position we have taken relative to the order of May 10th, the order refusing to vacate that order becomes immaterial.

On the merits, we are satisfied that the court, in the insanity proceedings, had no authority to make and enter any order determining that Mr. Pfeiffer was mentally competent to handle his affairs, which would in any manner be binding upon the guardian, or determinative of that question in the guardianship proceedings. Such a determination of mental competency could only be made in the guardianship proceedings.

The determination by the court in the first instance, that a person is insane, and should, under Rem. Rev. Stat., § 6930, be committed to a state hospital, does not necessarily determine that such person is mentally incompetent to handle his affairs. Such fact must be determined in a proceeding held pursuant to Rem. Rev.

Stat., § 1565 [P. C. § 9897]. Neither, in our opinion, does the discharge, as sane, of such a patient from the hospital by the superintendent, or the subsequent action by the court in the insanity proceedings, finding the patient sane, establish that the patient is mentally competent to handle his affairs, and that the guardianship should be terminated and the guardian discharged. We again call attention to the fact that, under our statutes, the proceeding to have a person declared insane and committed to a hospital is an entirely different and separate proceeding from one to have a guardian appointed for a mentally incompetent person. Rem. Rev. Stat., § 1565, *supra,* recognizes that there may be a difference between an insane person and a mentally incompetent person.

In the instant case, the order appointing Blanche E. Pfeiffer guardian recites, not that she was appointed guardian of the person and estate of George Pfeiffer, an insane person, but George Pfeiffer, a mentally incompetent person. The authorities generally recognize that there is a distinction between the two proceedings above referred to, and that the considerations involved in a determination of sanity, authorizing one to be discharged from a hospital, are entirely different from those involved in determining whether or not the guardianship should be discontinued and the guardian discharged.

The discharge of a ward from a hospital for the insane does not vacate the guardianship. 32 C. J. 665, § 284. In 28 Am. Jur. 679, § 36, we find the following statement:

"The courts have largely relied upon the opinions of qualified physicians and alienists in testing the advisability of discharging those confined to insane asylums, but have, at the same time, recognized that the determinant factors in such situations are not necessarily the same as those which decide the dis-

charge of a committee or guardian of an incompetent. In the latter instance, entirely different considerations are involved from those which arise in discharging the person of a lunatic from custody."

A discussion of the distinction last above mentioned will be found in the Oregon case of *In re Sneddon,* 76 Ore. 470, 149 Pac. 527. A discussion of this question is also found in the case of *In re Streeper,* 93 N. J. Eq. 102, 115 Atl. 582, wherein it is stated:

"It would seem entirely clear that a man may be mentally afflicted in such nature or degree as to render him incapable of managing himself or his affairs, and hence to require the appointment of a guardian for his person and property, and still not be mentally afflicted in such nature or degree as to warrant or require his confinement in the state hospital."

See, also, *Jacobs v. State,* 175 Misc. 561, 24 N. Y. S. (2d) 122.

In the case of *In re Minock's Estate,* 218 Mich. 97, 187 N. W. 345, the court held that an order declaring Mr. Minock sane was not determinative of the question as to whether or not he was mentally competent to manage his affairs. We quote from that opinion:

"Counsel for plaintiff seems to proceed upon the theory that, because an order has been entered that Mr. Minock is now sane, it must follow that the management of his property must be turned over to him as of course. We think this position is not tenable. It is due a guardian that, before it is required to turn over the large estate in its hands as guardian of an incompetent person, a hearing should be had upon the question of his competency, and an order made by the proper court adjudging the ward to be competent. This has not been done, and we think the judgment of the circuit judge should be affirmed."

We have recognized in this state the difference between "insanity" and mental competency to handle one's business affairs. In the case of *In re Bayer's*

*Estate,* 101 Wash. 694, 172 Pac. 842, we reversed an order of the lower court refusing to appoint a guardian for an incompetent person, therein stating:

"The question to be determined upon this appeal is not whether Mrs. Bayer was insane, but whether she was incapable of managing her business affairs by reason of mental unsoundness."

The same guardianship matter was again before us in 111 Wash. 276, 190 Pac. 323, and we again reversed an order of the lower court holding that the guardian should be discharged. We there stated:

"We do not think it profitable to discuss the evidence at length. It was directed mainly to the question of the sanity of Mrs. Bayer. While it establishes, in our opinion, the fact that she is not insane in the sense that she requires confinement, or requires the supervision of a guardian over her person, we think it falls far short of establishing that she is competent to manage her property interests, or as the statute has it, 'capable of managing her own affairs.' "

We are therefore of the opinion that the order of May 10, 1941, entered in the insanity proceedings (No. 28484), should be vacated, and an order entered to the effect that George Pfeiffer has been restored to sanity, without reference to any adjudication as to his mental competency to handle his business affairs, and without reference to the guardian or to the guardianship proceedings.

Cause No. 28484 is therefore remanded to the trial court, with instructions to enter an order in conformity with this opinion.

█ We now come to the order of May 22, 1941, entered in the guardianship proceedings (No. 28482), from which appellant has also appealed. We are convinced that the only effect of this order is to require the guardian to make an accounting. It is true this order purports to be based upon a letter and a certifi-

cate of the superintendent of the hospital, but we are of the opinion that, since under Rem. Rev. Stat., § 1575 [P. C. § 9907], the court has the right to require a guardian to render an accounting at any time, this is the only effect of such order. The order of May 22nd says nothing about closing the guardianship proceedings or discharging the guardian, and, it being only an order requiring the guardian to account, it is not, in our opinion, a final order, and hence no appeal will lie therefrom.

In view of what has heretofore been said, it is apparent that, before the guardianship proceedings can be terminated, the court, in the guardianship proceedings, must determine that Mr. Pfeiffer is mentally competent to handle his affairs, and only when the court has made such a determination, and has ordered the guardianship closed and the guardian discharged, would the rights of the guardian be affected and the order be a final order from which an appeal by the guardian would lie. That an appeal will lie from such an order, see *In re Bayer's Estate*, 108 Wash. 565, 185 Pac. 606.

The motion to dismiss the appeal from the order of May 22, 1941, entered in the guardianship proceedings, must be and is hereby granted. Neither party will recover costs herein on either appeal.

ROBINSON, C. J., BEALS, BLAKE, and SIMPSON, JJ., concur.