956 P.2d 312 (1998)
135 Wash.2d 255
Christina NIELSON, By and Through her Guardian ad Litem, Bradley NIELSON and Stacey Nielson, husband and wife, Appellants,
v.
SPANAWAY GENERAL MEDICAL CLINIC, INC., a Corporation; General Medical Clinics; and Karel Pokorny, M.D. and Jane Doe Pokorny, his wife, Respondents.
No. 65246-5.
Supreme Court of Washington, En Banc.
Argued January 14, 1998.
Decided May 28, 1998.
*313 Lopez & Fantel, Carl Lopez, Seattle, for Appellants.
Law Office of Stephen L. Henley, Stephen L. Henley, Seattle, for Respondents.
*314 GUY, Justice.
In this case we consider whether a plaintiff who is awarded a judgment for damages in a medical malpractice action in federal court has a state constitutional right to have a jury redetermine the damage issue in a subsequent action in state court, based on the same injuries, against a second defendant.

FACTS
On the evening of July 28, 1989, when Christina Nielson was 7 days old, her mother brought her to the Spanaway General Medical Clinic because the infant seemed to be breathing abnormally, had gradually stopped nursing during the day, and was sleeping more than usual. At the Clinic, Christina was examined by Dr. Karel Pokorny. Dr. Pokorny's notes indicate that he prescribed a medication for thrush and told the mother to take the child to Mary Bridge Children's Hospital if the child's symptoms did not improve or if she developed further problems.
Because she was not satisfied with Dr. Pokorny's diagnosis, Christina's mother telephoned the emergency room at Madigan Army Medical Center (Madigan) within a short time after leaving the Spanaway Clinic. Madigan told Christina's mother to bring the child to Madigan's emergency room immediately.
The infant and her mother arrived at Madigan approximately 20 minutes later. Delays in diagnosing and treating Christina for cardiac problems during the 6 hours she was at Madigan's emergency treatment facility caused Christina to suffer increasing shock and respiratory failure, which ultimately resulted in permanent brain damage.
Christina and her parents (hereafter referred to collectively as Nielsons) filed an action against the Spanaway Clinic and Dr. Pokorny in Pierce County Superior Court, and filed an action against the United States, as owner and operator of Madigan, in Federal District Court for the Western District of Washington. The injuries and damages claimed in both actions are identical.
Although the complaint in state court was filed first, the action in federal court against the United States was tried and concluded before any proceedings occurred in the state court action. An action against the United States under the Federal Tort Claims Act, 28 U.S.C. § 1346(b), must be tried to the court without a jury, 28 U.S.C. § 2402. The Nielsons' suit went to trial before United States District Court Judge William L. Dwyer. The Nielsons did not request the federal court to assert supplemental jurisdiction over the state court action,[1] nor did they seek a stay of the federal proceeding so that the state court action could be tried first.
Under the Federal Tort Claims Act, liability and damages are determined under the law of the state where the tort occurred. Richards v. United States, 369 U.S. 1, 9, 82 S.Ct. 585, 591, 7 L.Ed.2d 492 (1962). Judge Dwyer applied Washington law in determining that the United States was liable for the injuries suffered by Christina and in determining the amount of compensation due to the child and her parents. The federal judge considered that "[t]he fundamental principle of damages in Washington is that tortiously injured parties are to be returned as nearly as possible to the condition in which they would have been had the wrong not occurred." Clerk's Papers at 96. He entered 16 findings of fact relating to damages suffered by Christina and her parents and awarded a total of $3,133,202 in damages to Christina and $100,000 to each of her parents. The United States appealed the federal court decision, and Christina cross-appealed the amount of damages awarded to her.[2] *315 The United States and Christina settled for $2.85 million before the appeal was heard, and the appeal was subsequently dismissed. The final judgment entered in the trial court was not vacated.
Following the federal court action, the Spanaway Clinic and Dr. Pokorny moved for partial summary judgment in Pierce County Superior Court, arguing that the doctrine of collateral estoppel should be applied to bar relitigation of the damages issue. The parties agree that the child did not suffer any additional injury between the time she was seen at the Spanaway Clinic and the time she arrived at Madigan.
The trial court granted a partial summary judgment, ruling that the Nielsons were collaterally estopped from relitigating the issue of the amount of damages that would fully compensate them for their injuries.
The Nielsons appealed and the Court of Appeals affirmed. Nielson v. Spanaway Gen. Med. Clinic, 85 Wash.App. 249, 931 P.2d 931 (1997). In addition to holding that the trial court correctly applied the doctrine of collateral estoppel to the damages issue, the Court of Appeals held that Christina had impliedly waived her right to a jury trial by electing to proceed in the federal forum without seeking a stay or without seeking supplemental jurisdiction over the state claims in federal court. Nielson, 85 Wash.App. at 255-56, 931 P.2d 931.
This court granted the Nielsons' petition for review.

ISSUE
May the doctrine of collateral estoppel be properly and constitutionally applied to preclude relitigation of the issue of damages in a medical malpractice action in state court where the plaintiff has previously been awarded a judgment against a different tortfeasor, for the same injuries, following a bench trial in federal court?

DISCUSSION
In reviewing an order of summary judgment, an appellate court engages in the same inquiry as the trial court. Wilson v. Steinbach, 98 Wash.2d 434, 437, 656 P.2d 1030 (1982); Zenkina v. Sisters of Providence in Wash., Inc., 83 Wash.App. 556, 560, 922 P.2d 171 (1996), review denied, 131 Wash.2d 1003, 932 P.2d 644 (1997). Summary judgment will be ordered "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." CR 56(c). The purpose of a summary judgment is to avoid a useless trial when no genuine issue of material fact remains to be decided. Seven Gables Corp. v. MGM/UA Entertainment Co., 106 Wash.2d 1, 12, 721 P.2d 1 (1986).
Like the doctrine of res judicata which bars relitigation of a claim once it has been decided, the doctrine of collateral estoppel, or issue preclusion, prevents relitigation of an issue after the party against whom the doctrine is applied has had a full and fair opportunity to litigate his or her case. Hanson v. City of Snohomish, 121 Wash.2d 552, 561, 852 P.2d 295 (1993); Rains v. State, 100 Wash.2d 660, 665, 674 P.2d 165 (1983). The RESTATEMENT (SECOND) OF JUDGMENTS § 27 (1982) states the general rule as follows:
When an issue of fact or law is actually litigated and determined by a valid and final judgment, and the determination is essential to the judgment, the determination is conclusive in a subsequent action between the parties, whether on the same or a different claim.
The purpose of the doctrine is to promote the policy of ending disputes. McDaniels v. Carlson, 108 Wash.2d 299, 303, 738 P.2d 254 (1987); Beagles v. Seattle-First Nat'l Bank, 25 Wash.App. 925, 929, 610 P.2d 962 (1980). See also Philip A. Trautman, Claim and Issue Preclusion in Civil Litigation in Washington, 60 WASH. L. REV. 805, 806 (1985) (collateral estoppel "limits the vexation and harassment of other parties; lessens the overcrowding of court calendars, thereby freeing the courts for use by others; and, by providing for finality in adjudications, encourages respect for judicial decisions"). We recently noted that the *316 doctrine of collateral estoppel is well-known to Washington law as a means of preventing the endless relitigation of issues already actually litigated by the parties and decided by a competent tribunal.
Reninger v. Department of Corrections, 134 Wash.2d 437, 449, 951 P.2d 782 (1998).
Before the doctrine of collateral estoppel may be applied, the party asserting the doctrine must prove: (1) the issue decided in the prior adjudication is identical with the one presented in the second action; (2) the prior adjudication must have ended in a final judgment on the merits; (3) the party against whom the plea is asserted was a party or in privity with the party to the prior adjudication; and (4) application of the doctrine does not work an injustice. Reninger, 134 Wash.2d at 449, 951 P.2d 782; Hanson, 121 Wash.2d at 562, 852 P.2d 295; McDaniels, 108 Wash.2d at 303, 738 P.2d 254; Chau v. City of Seattle, 60 Wash.App. 115, 119, 802 P.2d 822 (1991).
In the present case, the Nielsons agree that the issue of damages decided in the federal court action is identical to the issue of damages in the state action against the Spanaway Clinic and Dr. Pokorny. They also admit they were parties in the prior action. Only the second and fourth elements are disputed here.
With respect to the second element, the Nielsons argue that the judgment entered in the federal court is not a "final judgment" because Judge Dwyer's determination of damages was appealed and the appeal was settled and dismissed before it was concluded on the merits. The Nielsons cite to Marquardt v. Federal Old Line Ins. Co., 33 Wash.App. 685, 658 P.2d 20 (1983), in support of their argument. In Marquardt, the Court of Appeals held that "collateral estoppel should not be applied to judgments of dismissal, even when based on settlement agreements, since the parties could settle for myriad reasons not related to the resolution of the issues they are litigating." Marquardt, 33 Wash.App. at 689, 658 P.2d 20. Marquardt does not address the circumstances of the present case where the plaintiffs fully litigated their cause, received a judgment in their favor, and then settled for a different amount on appeal.
Although the Nielsons and the United States reached a compromise settlement during the pendency of an appeal, the underlying judgment entered by Judge Dwyer was not vacated. The federal court judgment in the amount of $3.3 million is the judgment that the state trial court considered the "final judgment" for purposes of applying the doctrine of collateral estoppel. The trial court ruled the Nielsons were precluded from arguing damages in excess of the amount set forth in the federal court judgment, not the amount that the parties eventually settled for on appeal.
In this state an appeal does not suspend or negate the res judicata or collateral estoppel aspects of a judgment entered after trial in the superior courts. Riblet v. Ideal Cement Co., 57 Wash.2d 619, 621, 358 P.2d 975 (1961); Lejeune v. Clallam County, 64 Wash.App. 257, 265-66, 823 P.2d 1144 (1992) (a judgment or administrative order becomes final for res judicata purposes at the beginning, not the end, of the appellate process, although res judicata can still be defeated by later rulings on appeal). It also appears that a federal court would similarly determine that Judge Dwyer's judgment precludes relitigation of the damages issue. Ringsby Truck Lines, Inc. v. Western Conference of Teamsters, 686 F.2d 720 (9th Cir.1982). The Ringsby court noted that if "the effect of post-judgment settlements were automatically to vacate the trial court's judgment, any litigant dissatisfied with a trial court's findings would be able to have them wiped from the books." Ringsby, 686 F.2d at 721. This would be "quite destructive to the principle of judicial finality" by permitting a litigant to destroy the collateral conclusiveness of a judgment. Ringsby, 686 F.2d at 721 (quoting 1B JAMES WM. MOORE ET AL., MOORE'S FEDERAL PRACTICE ¶ 0.416[6], at 2327 (2d ed.1982)).
We hold the judgment entered in the federal district court, determining that $3.3 million was the amount that would fully compensate the Nielsons for their injuries, is a final judgment on the merits for purposes of applying the doctrine of collateral estoppel.
*317 With respect to the fourth element of the collateral estoppel test, the Nielsons argue that application of the doctrine would work an injustice by depriving them of their state constitutional right to have a jury determine the issue of damages.
In determining whether application of the doctrine of collateral estoppel would work an injustice, we focus on whether the parties to the earlier adjudication were afforded a full and fair opportunity to litigate their claim in a neutral forum. Rains, 100 Wash.2d at 666, 674 P.2d 165; Neff v. Allstate Ins. Co., 70 Wash.App. 796, 801, 855 P.2d 1223 (1993).
The Nielsons do not dispute that they were afforded a full and fair opportunity to litigate their claim in federal court. Instead they argue that they should have the opportunity to present the damage issue to a jury.[3] The Nielsons argue that application of the doctrine of collateral estoppel violates their absolute constitutional right to a jury determination of damages in state court. In support of their argument, the Nielsons rely exclusively on this court's decision in Sofie v. Fibreboard Corp., 112 Wash.2d 636, 771 P.2d 711, 780 P.2d 260 (1989).
In Sofie, we invalidated a controversial part of the 1986 tort reform act which attempted to limit the amount of noneconomic damages plaintiffs could recover in personal injury and wrongful death actions. Sofie held the statutory provision at issue violated Washington Const. art. I, § 21 by interfering with the jury's traditional function of determining a factual issue, that of damages.[4]Sofie, 112 Wash.2d at 638, 771 P.2d 711.
Const. art. I, § 21 provides:
The right of trial by jury shall remain inviolate, but the legislature may provide for a jury of any number less than twelve in courts not of record, and for a verdict by nine or more jurors in civil cases in any court of record, and for waiving of the jury in civil cases where the consent of the parties interested is given thereto.
In interpreting this provision, we look to the right to a jury trial as it existed at the time of the Constitution's adoption in 1889.[5]Sofie, 112 Wash.2d at 645, 771 P.2d 711 (citing State ex rel. Goodner v. Speed, 96 Wash.2d 838, 840, 640 P.2d 13 (1982); In re *318 Ellern, 23 Wash.2d 219, 224, 160 P.2d 639 (1945); State ex rel. Mullan v. Doherty, 16 Wash. 382, 384-85, 47 P. 958 (1897)).
With this historical perspective in mind, the court examines (1) whether the cause of action is one to which the right to a jury trial applied in 1889, and (2) the scope of the right to a jury trial. Sofie, 112 Wash.2d at 645, 771 P.2d 711. See also Edgar v. City of Tacoma, 129 Wash.2d 621, 626, 919 P.2d 1236 (1996); Auburn Mechanical, Inc. v. Lydig Constr. Co., 89 Wash.App. 893, 951 P.2d 311, 313 (1998). With respect to the scope of the right to a jury trial, the only factor at issue here, Sofie held that Washington's constitution afforded either party the right, in a civil action, "`upon an issue of fact, to demand a trial by jury.'" Sofie, 112 Wash.2d at 645, 771 P.2d 711 (quoting State ex rel. Mullan, 16 Wash. at 385, 47 P. 958). We then determined that the amount of damages which will fairly compensate a plaintiff is an issue of fact. Sofie, 112 Wash.2d at 645, 771 P.2d 711. See also Geschwind v. Flanagan, 121 Wash.2d 833, 854 P.2d 1061 (1993) (holding the issue of contributory negligence is an issue of fact for jury determination). Additionally, in order to present a jury question, the issue of fact must be material and legally relevant. Edgar, 129 Wash.2d at 631, 919 P.2d 1236.
It is thus clear that where a dispute exists over what amount of damages will fairly compensate a plaintiff in a personal injury action, the dispute presents a question of fact for the jury in a case brought in superior court in Washington. The question in the present case is whether an issue of fact continues to exist after it has been fully litigated and determined in a prior case.
We have not previously had occasion to determine whether the application of the doctrine of collateral estoppel infringes upon a litigant's state constitutional right to a jury trial. However, this issue has come squarely before the United States Supreme Court in reference to a civil litigant's right to a jury trial under the Seventh Amendment.[6]See Parklane Hosiery Co. v. Shore, 439 U.S. 322, 99 S.Ct. 645, 58 L.Ed.2d 552 (1979). In State v. Gunwall, 106 Wash.2d 54, 60-61, 720 P.2d 808, 76 A.L.R.4th 517 (1986), we recognized that while opinions of the Supreme Court are not controlling on state courts construing their own constitutions, they are nevertheless important guides on the subjects they squarely address. "`Federal precedent in areas addressed by similar provisions in our state constitutions can be meaningful and instructive.'" Gunwall, 106 Wash.2d at 60, 720 P.2d 808 (quoting State v. Hunt, 91 N.J. 338, 363, 450 A.2d 952 (1982) (Handler, J., concurring)). See also Sofie, 112 Wash.2d at 647, 771 P.2d 711 (Supreme Court jurisprudence on the Seventh Amendment's scope in civil trials, while not binding on the states, provides insight in interpreting our state constitutional right to jury trial); State v. Fortune, 128 Wash.2d 464, 474-75, 909 P.2d 930 (1996); State v. Lynch, 84 Wash.App. 467, 476, 929 P.2d 460 (1996).
In Parklane, the defendant corporation was sued by the Securities and Exchange Commission (SEC) in an action alleging a proxy statement issued by Parklane in connection with a merger was materially false and misleading. The SEC requested declaratory and injunctive relief. Because the action was one for equitable relief, it was tried to the bench. The trial court found the proxy statement to be false and misleading, as alleged, and granted the requested relief. The stockholders of Parklane had filed a class action, which was not tried until after the SEC lawsuit was completed. The stockholders asked for damages and rescission of the merger, alleging the proxy statement was false and misleading. Parklane, 439 U.S. at 324-25, 99 S.Ct. at 648. After the order in the SEC action was entered, the stockholders moved for partial summary judgment, asserting that Parklane was collaterally estopped from relitigating the issues that had been resolved against it in the SEC action. Parklane countered that its Seventh Amendment right to jury trial would be violated *319 unless a jury were permitted to decide the factual questions in the case.
In holding that application of the doctrine of collateral estoppel does not violate a civil litigant's Seventh Amendment right to a jury trial, the Supreme Court in Parklane held that a litigant in a civil case is not entitled to a trial by jury, "`unless and except so far as there are issues of fact to be determined.'" Parklane, 439 U.S. at 336, 99 S.Ct. at 654 (quoting Ex parte Peterson, 253 U.S. 300, 310, 40 S.Ct. 543, 546, 64 L.Ed. 919 (1920)). The Supreme Court held that "once an issue has been resolved in a prior proceeding, there is no further factfinding function to be performed." Parklane, 439 U.S. at 336 n. 23, 99 S.Ct. at 654 n. 23.
We find the reasoning of Parklane persuasive, sound and consistent with Washington law. See, e.g., CR 56 (authorizing summary judgment in actions in which the trial court determines there is no genuine issue of material fact); Reninger, 134 Wash.2d 437, 951 P.2d 782 (factual determination by state personnel board is conclusive in subsequent tort action); Shoemaker v. City of Bremerton, 109 Wash.2d 504, 745 P.2d 858 (1987) (factual determination of city civil service commission given preclusive effect in later federal court action for damages under the federal civil rights act, 42 U.S.C. § 1983); Neff, 70 Wash.App. 796, 855 P.2d 1223 (factual determination of amount of damages, made during mandatory arbitration proceeding, precluded redetermination of damage issue in subsequent trial against a different party); Robinson v. Hamed, 62 Wash.App. 92, 813 P.2d 171 (1991) (factual determination in an arbitration proceeding may be the basis for collateral estoppel in a subsequent judicial trial; plaintiff's assertion that doing so deprives him of his right to trial by jury is totally without merit).

CONCLUSION
Although the factual issue of damages is a jury question in Washington, there must be an issue of fact to resolve in order for that right to arise. Where the issue has been resolved in a prior proceeding, no factfinding duty remains for a jury on that issue.
We hold the Nielsons had no right to a jury trial on the issue of damages because no factual issue remained to be decided once the federal trial court had determined the amount of damages suffered by the Nielsons as a result of the injury.
The Court of Appeals additionally held the Nielsons had impliedly waived their constitutional right to a jury trial by failing to ask for a stay of the federal court proceeding or by failing to request the federal court to assume supplemental jurisdiction over the state action. Because the Nielsons did not have a constitutional right to have the jury redetermine the issue of damages, we do not address the issue of waiver.
Affirmed.
DOLLIVER, SMITH, MADSEN and TALMADGE, JJ., concur.
SANDERS, J. (dissenting).
The constitution of our state does not mince words on the subject at hand. "The right of trial by jury shall remain inviolate...." Wash. Const. art. I, § 21. This court has regularly demonstrated that it, too, does not mince words. "The term `inviolate' connotes deserving of the highest protection.... For such a right to remain inviolate, it must not diminish over time and must be protected from all assaults to its essential guaranties." Sofie v. Fibreboard Corp., 112 Wash.2d 636, 656, 771 P.2d 711, 780 P.2d 260 (1989) (citation omitted). The right of trial by jury "is a valuable right, jealously guarded by the courts." Watkins v. Siler Logging Co., 9 Wash.2d 703, 710, 116 P.2d 315 (1941). "The right of trial by jury is a constitutional right, and is not to be denied a litigant who insists upon it and complies with the statutes relating thereto." O'Connor v. Force, 58 Wash. 215, 217-18, 108 P. 454, 109 P. 1014 (1910).
It is well settled that in determining whether parties are entitled to avail themselves of this constitutional protection, this court looks at the right as it existed in 1889. Sofie, 112 Wash.2d at 645, 771 P.2d 711; Majority at 318. It is equally well established that the question of damages is an integral component of the right to jury trial *320 and thus falls squarely within the scope of this part of our constitution. Sofie, 112 Wash.2d at 645, 771 P.2d 711; Majority at 318.
The majority avoids what would appear to be the logical outcome of the abovethat petitioners are entitled to a jury trial on the amount of damages in the Washington courtsby finding that no question of damages exists. Majority at 319.
However, this disappearing act is made possible by the application of the doctrine of collateral estoppel. The majority finds that the case at hand meets the following four-part test for collateral estoppel as set out in recent decisions of this court: (1) An identical issue had been decided; (2) the prior adjudication must have ended in a final judgment on the merits; (3) the party against whom the plea is asserted was a party or in privity with the party to the prior adjudication; and (4) application of the doctrine does not work an injustice. Majority at 316. However, the third requirement for collateral estoppel as set out by the majority, and by this court in other recent cases, is far different from the historical requirement of identity "`of persons and parties.'" Bordeaux v. Ingersoll Rand Co., 71 Wash.2d 392, 396, 429 P.2d 207 (1967) (quoting Northern Pac. Ry. Co. v. Snohomish County, 101 Wash. 686, 172 P. 878 (1918)).[1]
As "[o]ur basic rule in interpreting article 1, section 21 is to look to the right as it existed ... in 1889," Sofie, 112 Wash.2d at 645, 771 P.2d 711, to understand petitioners' rights in the case at hand, we must examine the doctrine of collateral estoppel as it existed in 1889. And at that time mutuality of all parties was the accepted rule. For example in 1922 this court refused to allow a decision in a federal court to be used against a party to the federal action by those who were not parties to that federal action. Instead, this court said it is "[t]he elementary rule that estoppels must be mutual to be effective...." State ex rel. First Nat'l Bank v. Hastings, 120 Wash. 283, 311, 207 P. 23 (1922). Only those who would be bound by the previous judgment may seek to use it as an estoppel. Id. See also Meeker v. Mettler, 50 Wash. 473, 479, 97 P. 507 (1908) (Rudkin, J., dissenting) (noting "elementary rule that estoppels must be mutual.... It is one of the comparatively few questions upon which there is no division of opinion."); Jack H. Friedenthal et al., Civil Procedure § 14.14, at 688 (2d ed.1993) (noting historical rule that "[o]nly parties and their privies may be bound or may take advantage of a judgment."); Philip A. Trautman, Claim and Issue Preclusion in Civil Litigation in Washington, 60 Wash. L.Rev. 805, 839 (1985) (noting that parties and their privies not bound by a judgment generally could not benefit from it "[u]ntil the last two decades").
It was first in 1942 that the California Supreme Court declined to require mutuality of parties in a collateral estoppel case. Bernhard v. Bank of Am. Nat'l Trust & Sav. Assoc., 19 Cal.2d 807, 122 P.2d 892 (1942). Yet, 25 years later, this court stated that collateral estoppel could not be asserted as a defense by a party who had been a stranger to the prior proceeding. Bordeaux, 71 Wash.2d at 396, 429 P.2d 207. Shortly after Bordeaux, this court questioned the wisdom of the doctrine of mutuality, but declined to decide the issue. Henderson v. Bardahl Int'l Corp., 72 Wash.2d 109, 116, 431 P.2d 961 *321 (1967). Following this dicta an appellate court abandoned mutuality three years later. Lucas v. Velikanje, 2 Wash.App. 888, 894, 471 P.2d 103, review denied, 78 Wash.2d 994 (1970). It was later in that decade that we first allowed an issue to be precluded without mutuality of parties. Kyreacos v. Smith, 89 Wash.2d 425, 428, 572 P.2d 723 (1977).[2]
The majority, however, does not examine the historical question involved, despite its conceptual fidelity to historical analysis. See Majority at 317-18. Instead, it frames the question in the present case as "whether an issue of fact continues to exist after it has been fully litigated and determined in a prior case." Majority at 318. Were this the question, the analysis would be persuasive. But, as the majority notes, there is only one question that matters in this case: What was the right to a jury trial at the time of the constitution's adoption in 1889? Majority at 318. There is no doubt, as the majority admits, that the Nielsons would have been entitled to a jury trial on the question of damages. Majority at 316. There is equally no doubt that respondents in 1889, due to a lack of mutuality, would have been unable to raise the doctrine of collateral estoppel to deny the Nielsons' their constitutional right. Yet, the majority estops the Nielsons.
Such erosion of a fundamental constitutional right through the application of modern doctrine is precisely the evil against which Justice Utter warned in Sofie: "It would defeat the intention of our constitution's framers to interpret an essential right so that it slowly withers away." Sofie, 112 Wash.2d at 649, 771 P.2d 711. See also State v. Strasburg, 60 Wash. 106, 116, 110 P. 1020 (1910) (noting that the inviolate right of jury trial could be destroyed by the process of limiting the questions of fact to be submitted to the jury).
The majority's additional reliance on the Seventh Amendment jurisprudence of the United States Supreme Court is disproportionate to the authority it offers. See Majority at 318-19 (applying reasoning of Parklane Hosiery Co. v. Shore, 439 U.S. 322, 99 S.Ct. 645, 58 L.Ed.2d 552 (1979) to the case at hand). The Seventh Amendment to the United States Constitution, which is what the Supreme Court examined in Parklane, is written in general, compromising language. Colgrove v. Battin, 413 U.S. 149, 155, 93 S.Ct. 2448, 2451-52, 37 L.Ed.2d 522 (1973). Although part of the federal constitution, the right protected is a "common law" right, not a constitutional one. Id. at 155-57, 93 S.Ct. at 2451-53. The jury trial right of section 21 of our state constitution, on the other hand, is a constitutional protection, and not subject to common law changes. Sofie, 112 Wash.2d at 652, 771 P.2d 711.
The right to a jury in a civil trial in this state "is protected solely by the Washington Constitution...." Sofie, 112 Wash.2d at 644, 771 P.2d 711.[3] While it is true that this court recognized that decisions of the United States Supreme Court provide "some insight", id. at 647, 771 P.2d 711, the insights gleaned in Sofie dealt with historical analysis, not current opinion. Nothing in Parklane provides the illumination the majority discerns as it regards the rights guaranteed by the Washington Constitution. In fact, Parklane makes the dissent's case for us. Under our state constitution and the precedents of this court, what the United States Supreme Court may currently think of the mutuality doctrine is irrelevant. The question is what our state's rule was in 1889. And, as the United States Supreme Court noted in 1979, mutuality of parties was the rule "[u]ntil relatively recently." Parklane, 439 U.S. at 326-27, 99 S.Ct. at 649.
Against the uncompromising mandate of our constitution, we are faced with the judicially *322 invented doctrine of civil collateral estoppel. See Trautman, supra, at 842. The policy arguments favoring this doctrine are judicial economy and the prevention of inconvenience, and even harassment, of parties. Reninger v. Department of Corrections, 134 Wash.2d 437, 449, 951 P.2d 782 (1998). Accepting, arguendo, the validity of such arguments does not change the proper outcome of this case.[4] Valid policy arguments existed in favor of the Legislature's attempt to limit jury determination of noneconomic damages under RCW 4.56.250. Sofie, 112 Wash.2d at 638, 771 P.2d 711. That did not stop this court from finding such limitations a violation of article I, section 21 of our state constitution. Id. at 669, 771 P.2d 711.
During the debate on RCW 4.56.250 then-Senator Talmadge noted that
[t]he Constitution of this state ... talks about the right to trial by jury being inviolate, not being something that we can invade as members of the Legislature, and when you start to put limitations on what juries can do, you have, in fact, invaded the province of the jury and have not preserved the right to a trial by jury inviolate.
Sofie, 112 Wash.2d at 656, 771 P.2d 711 (quoting Senate Journal, 49th Leg. 449 (1986)). The judiciary, entrusted with the responsibility of upholding the constitution, certainly has no more right than the legislature to allow its own needs, wants, policy arguments, or doctrines to supersede the rights enshrined in that document. See Wash. Const. art. IV, § 28 (requiring all judges to take and subscribe an oath to support the Constitution of the State of Washington). "The provisions of this Constitution are mandatory, unless by express words they are declared to be otherwise." Wash. Const. art. I, § 29. Cf. Kennedy v. Real Estate Salesmen Local 154A, 53 Wash.2d 223, 224, 332 P.2d 939 (1958) ("This is a constitutional court created by the Washington constitution ... and its jurisdiction, both original and appellate is derived from [the constitution].").
No measure of "judicial economy" is adequate to induce the sale of any constitutional right. The judiciary exists to insure such rights, and the convenience of the judiciary is clearly subservient to this duty. "[W]hile we strive for efficiency in courts ... we must also fashion procedures which adequately protect the constitutional right to jury trial." City of Seattle v. Williams, 101 Wash.2d 445, 452, 680 P.2d 1051 (1984).
A judicially created doctrine must give way to the mandate of our constitution. Our constitution guarantees that the right to trial by jury must be inviolate, and this court has consistently held that the right as it existed in 1889 is the guiding point for the judiciary. In 1889 petitioners' right to a jury trial on damages could not be estopped by respondents who had been strangers to the earlier federal action. Nor are petitioners estopped in the case at hand, and summary judgment on the question of damages was therefore improper.
Having determined that the application of the doctrine of collateral estoppel in this case violates our state constitution, and therefore works a grievous injustice against petitioners, I would hold that the doctrine of collateral estoppel is not available to respondents. Therefore, I see no reason to consider the question of whether or not a settlement during the appeals process renders an earlier judgment "final" for purposes of that doctrine.

No Waiver
Determining that the Nielsons had no constitutional right to a jury trial, the majority decides not to address the question as to whether they had waived such a right. Majority at 319. However having reached the opposite conclusion regarding the meaning of our state's constitution, I feel an obligation to examine this issue as well.
The Court of Appeals held in a single paragraph, supported by neither analysis nor citation, Nielsons had waived their jury trial right: (1) by electing to proceed in the federal forum, where there is no jury trial right, without seeking a continuance; and (2) by failing to seek supplemental jurisdiction over *323 the state claim and requesting a jury trial on the state issue in federal court. Nielson v. Spanaway Gen. Med. Clinic, Inc., 85 Wash. App. 249, 255-56, 931 P.2d 931 (1997).
Certainly a party may waive its jury trial right. State v. Lane, 40 Wash.2d 734, 736, 246 P.2d 474 (1952). However, a waiver must be intelligent, voluntary, and free from improper influence. Id. at 737, 246 P.2d 474. "[A] court must indulge every reasonable presumption against waiver of fundamental rights." City of Bellevue v. Acrey, 103 Wash.2d 203, 207, 691 P.2d 957 (1984) (citation omitted) (holding that criminal defendant's actions at trial could not be imputed to manifest waiver of jury trial right).
Most fundamentally there can be no waiver here because such a claim against the federal government must proceed in a federal forum by bench trial.[5] There is no choice, and where there is no choice there can be no waiver.[6]
Moreover, Nielsons' decision to not seek a continuance of their federal suit, does not satisfy the requirements for waiver of a constitutional right either. The Nielsons had, in fact, filed their state suit before the federal suit, although the latter was concluded before the former trial began. Majority at 314. The Court of Appeals held in this case that in order for a permanently brain damaged infant to maintain her constitutional right to a jury trial, she would need to delay her opportunity to receive necessary moneys that might be available to her under the Federal Tort Claims Act. It defies my comprehension that any court impose a requirement of delayed just compensation as a condition precedent to the exercise of an explicit constitutional right. Such is not the stuff of which waiver is made.
While it is true the Nielsons could have combined their state action into the federal lawsuit, and requested a jury trial on their state claim, 28 U.S.C. § 1367(a), such does not yield a waiver of this absolute right to proceed independently in state court to redress a state claim under state law. As Justice Holmes observed, "the plaintiff is absolute master of what jurisdiction he will appeal to...." Healy v. Sea Gull Specialty Co., 237 U.S. 479, 480, 35 S.Ct. 658, 659, 59 L.Ed. 1056 (1915). See also Merrell Dow Pharm. Inc. v. Thompson, 478 U.S. 804, 810 n. 6, 106 S.Ct. 3229, 3233 n. 6, 92 L.Ed.2d 650 (1986).[7]
To hold, as does the appeals court, because the Nielsons choose to exercise their jurisdictional rights as plaintiffs, they had waived their constitutional rights as citizens of this state is incomprehensible.
Concluding the Nielsons had a constitutional right to have a jury determine damages, and that they did not waive this right, I would reverse the decision of the trial court which the appeals court affirmed, and remand for a trial by jury.
ALEXANDER and JOHNSON, JJ., concur.
NOTES
[1] If both actions had been tried simultaneously in federal court, the Nielsons would have been entitled to a jury trial on the state claim. See, e.g., Hurst v. United States, 882 F.2d 306 (8th Cir.1989) (joint bench and jury trial); Allegheny Airlines, Inc. v. United States, 504 F.2d 104, 111 n. 7 (7th Cir.1974) (suggesting that in order to avoid inconsistency in verdicts in such cases, the federal trial court should submit the case to the jury, which would function in two capacities: (1) it would render a verdict as to those defendants other than the United States, and (2) it would act as an advisory jury with respect to the plaintiffs' case against the United States under the Federal Tort Claims Act).
[2] Christina had sought more than $9 million in damages. The parents did not appeal their damage awards.
[3] At the core of the Nielsons' argument is their belief that the federal trial court's award of damages was too low. A plaintiff's dissatisfaction with the amount of damages awarded after a full trial may be the basis of an appeal of the trial court's decision, but it is not an "injustice" that prevents application of the doctrine of collateral estoppel on the issue of damages in a subsequent action. Neff v. Allstate Ins. Co., 70 Wash.App. 796, 803, 855 P.2d 1223 (1993); Girtz v. New Hampshire Ins. Co., 65 Wash.App. 419, 423, 828 P.2d 90(1992).
[4] The Seventh Amendment to the United States Constitution does not apply to civil actions in state courts. Sofie v. Fibreboard Corp., 112 Wash.2d 636, 644, 771 P.2d 711, 780 P.2d 260 (1989), was decided on independent state constitutional grounds. See also Edgar v. City of Tacoma, 129 Wash.2d 621, 625 n. 3, 919 P.2d 1236 (1996).
[5] This historical test is similarly employed by nearly all of the states in analyzing their state constitutions, see State ex rel. Goodner v. Speed, 96 Wash.2d 838, 840-41, 640 P.2d 13 (1982), and by the United States Supreme Court in interpreting a civil litigant's right to a jury trial under the Seventh Amendment. Parklane Hosiery Co. v. Shore, 439 U.S. 322, 99 S.Ct. 645, 58 L.Ed.2d 552 (1979). See generally CHARLES ALAN WRIGHT, LAW OF FEDERAL COURTS § 92, at 653-62 (5th ed.1994). This analytical approach has been criticized as being so simplistic that it reduces the jury's complex history, adaptability and functioning, making the jury less important. Stephan Landsman, The Civil Jury in America: Scenes from an Unappreciated History, 44 Hastings L.J. 579, 580 (1993) ("defining the jury's complexity and mutability out of existence prevents us from fully appreciating the institution's past service, present value, and future potential"); Kenneth S. Klein, The Myth of How to Interpret the Seventh Amendment Right to a Civil Jury Trial, 53 Ohio St. L.J. 1005, 1028 (1992) (stating that over time, the application of this historical test has become more and more surreal, and proposing a test that would look to the intent of the drafters, rather than at the right to a jury at a particular moment in history; "[a]sking how 1791 England would deal with a 1991 multi-district patent infringement case is a little like asking how the War of the Roses would have turned out if both sides had airplanes"). See also Developments in the LawThe Civil Jury, 110 HARV. L. REV. 1408 (1997); Lloyd E. Moore, THE JURY: TOOL OF KINGS, PALLADIUM OF LIBERTY (1973) (tracing the changes in juries under the common law in England and in colonial America); Auburn Mechanical, Inc. v. Lydig Constr., Inc., 89 Wash.App. 893, 951 P.2d 311 (1998).
[6] The Seventh Amendment provides "In Suits at common law, where the value in controversy shall exceed twenty dollars, the right of trial by jury shall be preserved...." The Seventh Amendment was intended to preserve the right to a jury trial as it existed in 1791. Parklane, 439 U.S. at 333 n. 20, 99 S.Ct. at 652 n. 20.
[1] In its decision, the majority states that only the second and fourth elements are disputed here. Majority at 316. However, the Nielsons clearly challenged the constitutionality of the application of collateral estoppel in this case. Majority at 318. See also Pet. for Review at 11. Finding the doctrine applicable in this case, the majority sees no constitutional right to a jury trial on the issue, and no injustice. The majority views the question of injustice through the prism of opportunity to litigate a claim. Majority at 317. However, the question is not whether or not the Nielsons had a full and fair opportunity to litigate their claim before a federal judge. Rather, the question is whether they had a constitutional right to have their claim for damages in a state court determined by a jury. As I find that petitioners have such a constitutional right, I also find that the denial of that right to effect judicial economy does work an injustice. Cf. Kennedy v. City of Seattle, 94 Wash.2d 376, 378, 617 P.2d 713 (1980) (holding that it would be "manifestly unjust" to use collateral estoppel to allow the constitutionality of a statute to be determined by an unappealed municipal court ruling). However, I proceed under the third prong of the collateral estoppel test as it is the analysis of the historical question of parties entitled to assert estoppel that establishes petitioners' constitutional right in this case.
[2] In Kyreacos the plaintiff was estopped from asserting a claim under the doctrine of respondent superior against the City of Seattle, despite the fact that she was neither a party nor in privity with a party to the earlier suit. This, as the court noted, was "a most unique case which must be confined to its peculiar facts and to its procedural posture." Kyreacos v. Smith, 89 Wash.2d 425, 428, 572 P.2d 723 (1977).
[3] As Sofie noted, the Seventh Amendment to the United States Constitution is not even applicable to the States. Sofie, 112 Wash.2d at 644, 771 P.2d 711. See also Chicago Rock Island & Pac. Ry. Co. v. Cole, 251 U.S. 54, 56, 40 S.Ct. 68, 69, 64 L.Ed. 133 (1919).
[4] I wish to emphasize that I am merely hypothesizing here, and do not wish to imply that petitioners in any way, manner, or form have sought to harass respondents.
[5] The preclusion of a jury under the federal statute is part and parcel of the Faustian bargain that is the Federal Torts Claim Act (FTCA): Plaintiffs have no right to a jury trial, while the federal government waives sovereign immunity. See George v. United States, 196 F.2d 445, 450 (9th Cir. 1952).
[6] Even a federal court applying a Seventh Amendment analysis would be unlikely to find waiver on these facts. For example, a prisoner who had lost his FTCA claim against the federal government in a bench trial was held not to be collaterally estopped from relitigating the same facts before a jury in a Bivens action against two federal employees. Bums v. Lawther, 53 F.3d 1237, 1242 (11th Cir.1995) (per curiam).
[7] A federal court may reject a state plaintiff's request for supplemental jurisdiction. 28 U.S.C. § 1367(c). See also United Mine Workers of Am. v. Gibbs, 383 U.S. 715, 726, 86 S.Ct. 1130, 1139, 16 L.Ed.2d 218 (1966) ("[P]endent jurisdiction is a doctrine of discretion, not of plaintiff's right."). Thus there is no guarantee that Judge Dwyer would even have allowed the double trial respondents claim the Nielsons were obligated to request.