
IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION THREE

| | | |
|---|---|---|
| VIRGIL D. REDWINE and TERA D. REDWINE, husband and wife, | ) ) ) | No. 39097-7-III |
| Respondents, | ) ) | |
| v. | ) ) | UNPUBLISHED OPINION |
| JERRY LEE REDWINE, a single man, | ) ) ) | |
| Appellant. | ) | |

LAWRENCE-BERREY, A.C.J. — Jerry Redwine appeals the release of recorded lien claims he placed on his brother's properties. He argues the trial court erred because he had a right for a jury to decide whether his claims of lien were frivolous. We disagree. His claims had been previously litigated and dismissed.

FACTS

Jerry and Virgil Redwine[1] are brothers who have a long-standing dispute over two pieces of property, referred to as "Unit 45" and "Unit 120."

---

[1] The brothers have the same last name, so we refer to them by their first names. We mean no disrespect.

*Unit 45*

Jerry has lived on and farmed Unit 45 since the 1970s. He originally financed the purchase of Unit 45 through the Farm Credit System (FCS), but he defaulted on the loan and in 1987 FCS judicially foreclosed. Jerry retained the statutory right of redemption, and FCS was not willing to finance his repurchase of the property. FCS was amenable, however, to Jerry finding a third party to do so.

In 1988, Jerry and Virgil orally agreed that Virgil would purchase Unit 45 from FCS and transfer the property back to Jerry once Jerry fully reimbursed Virgil for all expenses. They did not discuss what would happen if Jerry failed to reimburse Virgil. FCS agreed to sell the property to Virgil, and Virgil purchased the property under a real estate installment contract.

While Jerry made payments to Virgil, they were insufficient to cover all of the property's expenses. In October 2004, Jerry acknowledged he was behind in reimbursement payments, but a few months later claimed that Virgil owed him money. Virgil fully paid the real estate contract, and FCS conveyed Unit 45 to him in July 2005.

Jerry lived on Unit 45 and actively farmed and invested funds in his farming operation until some point between 2001 and 2004. He also subleased part of the farming area during that period, receiving rent paid by the subtenants. After that period, Virgil

prohibited Jerry from further farming but allowed him to continue to live on the farm and manage some fruit trees. In 2005, Jerry asked Virgil to transfer Unit 45 to a third party, but Virgil was unwilling to do so because Jerry had defaulted on his reimbursement payments. In 2005, Virgil began leasing an irrigated portion of Unit 45 to a third-party farmer.

Jerry continued living on Unit 45. In 2008, he leased an area of the orchard to Seth Weeks. Weeks invested money in and revamped the orchard significantly, such that his improvements replaced any work Jerry had done on the orchard. Weeks made rent payments to Jerry until 2015, when he began making payments directly to Virgil. In 2011, Jerry learned that Virgil had previously paid the real estate contract in full.

*Unit 120*

In 1993, Jerry created a trust naming himself, Virgil, and a third brother, David, as trustees. Their mother transferred into the trust four acres of Unit 120, on which the family home sat. Virgil owns the remaining 77 acres of Unit 120. In 1998, the brothers, as trustees, transferred the property from the trust to Virgil alone, apparently to obtain a loan for Virgil's farming operations on Unit 120. Virgil orally agreed he would treat the property as if it were still part of the trust and transfer it back after their mother died. After their mother died in 2006, however, Virgil did not transfer the property back. Jerry

3

sent Virgil a letter two weeks after their mother died, indicating Virgil had wrongfully taken ownership of the property and suggesting he sell it and place the proceeds in the trust.

*2012 claims of lien*

On November 14, 2012, Jerry recorded a claim of lien on Unit 45 pursuant to the mechanics' lien statute, chapter 64.04 RCW. Jerry asserted that he had provided Virgil all funds to pay the loan on Unit 45 and that Virgil refused to transfer ownership per their oral agreement. He claimed a lien of $3,600,000 on the property. Jerry appended an "Affidavit of Facts" to the recorded claim of lien, stating in relevant part:

> 2. Affiant purchased land known as Unit 45 . . . in 1973 and Homesteaded property in 1974 and has lived on and occupied said property continuously to this date.
> 3. In October 1988, the Federal Land Bank obtained a Writ of Assistance to the Sheriff to remove me from my property for an alleged debt. Jon Hatt of the Federal Land Bank on the first day came to and told me that they would sell said property to a friendly party of my choice to end further legal action between us.
> 4. At this time I talked with my Dad and we both thought that Virgil Redwine my brother would be the best choice because he was my brother and we believed that we could trust him to return legal ownership of property back to Affiant.
> 5. I talked with Virgil Redwine about this and he did not offer any reservations about doing this and understood his fiduciary responsibility to return legal ownership of said property as soon as could be done.
> 6. Virgil Redwine did not has not [sic] put up any monies of his own at any time to purchase legal owner ship [sic] of said property.

4

7.      Virgil Redwine told me in the year 2011 that he had paid said debt off.

8.      That after this I sent Virgil Redwine a Quit Claim Deed to execute to return legal ownership of said property to my control and Virgil Redwine has refused to return legal ownership of said property to me and in fact refuses to talk with me.

9.      So the fact is that I have purchased said property, homesteaded said property and made every improvement to said property and have had the assurance and expectation for the past 23 years or there abouts that Virgil Redwine would return legal ownership of said property back to me; and Virgil refuses to do so.

10.      That at this time I am still making improvements to said property and occupy my property and Homestead known as Unit 45 . . . .

11.      That a good man leaves an inheritance for his children's children.  Virgil Redwine at this time and for the past years could be stopping the inheritance of my property to my children from happening causing him to commit the act of theft (stealing) from me, my children and my grand children causing me triple damages.

Clerk's Papers (CP) at 119-20.

On December 4, 2012, Jerry and David recorded a claim of lien on Unit 120, also pursuant to chapter 64.04 RCW.  They alleged they had been involuntarily providing services on the property since their mother's death in 2006 because the property should have been distributed among the three brothers, and they claimed a lien of $300,000.

5

*Jerry's 2013 lawsuit against Virgil and Tera*

In May 2013, Jerry and David petitioned to foreclose on the claims of lien and named Virgil and his wife, Tera, as defendants.[2]  In response, Virgil and Tera moved for an order directing Jerry and David to show cause why the liens should not be released as frivolous or clearly excessive under RCW 60.04.081.  After giving Jerry and David an opportunity to hire counsel, and them being unsuccessful in so doing, the superior court entered an order finding that Jerry and David's liens were frivolous and ordered that they be released pursuant to RCW 60.04.081.

Jerry later retained counsel and brought the 2013 action to trial in 2018.  At trial, Jerry requested the remedy of a constructive trust as to a portion of Unit 120 and the remedy of express trust or constructive trust as to Unit 45.  In addition, he recorded a declaration of homestead on Unit 45.

In late 2018, the court entered a judgment dismissing Jerry's requests for relief as well as all other claims he had previously asserted but did not advance at trial.  Regarding Unit 120, the court concluded that Jerry's claim for a constructive trust was subject to a three-year statute of limitations, and Jerry's suit, filed seven years after their mother's death, was therefore barred by the statute of limitations.  Regarding Unit 45, it concluded

---

[2] Grant County Superior Court Cause No. 13-2-00609-6.

that Jerry had failed to satisfy his burden of proof to support a constructive trust or an express trust. Jerry appealed, and we affirmed. *Redwine v. Redwine*, No. 36551-4-III, slip op. at 2 (Wash. Ct. App. Sept. 14, 2021), https://www.courts.wa.gov/opinions/pdf/365514_unp.pdf.

*2019 claim of lien*

On March 1, 2019, while Jerry's appeal was pending, he recorded a second claim of lien on Unit 45. The document, which appended an Affidavit of Facts, made substantially the same assertions related to Unit 45 that were made in 2012. The only differences were minor details about the agreement, its breach, and the damages requested.

*2022 claim of lien*

On April 5, 2022, shortly after we issued our mandate in the appeal, Jerry recorded a third claim of lien, this time against Unit 45 and Unit 120. It again appended an Affidavit of Facts, which included substantially the same information, varying only in a couple minor details. Jerry noted "[t]hat this matter has been thru [sic] the courts and the courts have ruled against the evidence." CP at 40. He indicated that Virgil had not just lied but committed perjury, which had been "proven beyond a doubt in the appeal, the trial court records and exhibits." CP at 40.

Jerry also included a section titled "Common Law Lien Law and Legal Definition," which described a common law lien as a lien "that is not . . . a statutory lien, a security interest created by agreement, or a judicial lien obtained by legal or equitable process or proceedings." CP at 38. He claimed a common law mechanics' lien for the irrigation system, two mobile homes, improvements to a shop building, and the orchard on Unit 45. He claimed that Virgil should have transferred the property no later than 2013 and thus Virgil owed Jerry all rents Virgil had collected since then.

*Present action*

On May 11, 2022, Virgil and Tera filed a complaint against Jerry, requesting in part that the court release Jerry's 2018 declaration of homestead and his 2019 and 2022 claims of lien as frivolous and that it enjoin Jerry from recording any further claims of lien or encumbrances against their property. In his answer, Jerry stated there were facts in dispute and demanded a trial by jury.

Virgil and Tera moved for an order requiring Jerry to show cause why the court should not release the liens as frivolous under RCW 60.04.081. They argued that all issues raised by Jerry had been litigated and finally determined in the earlier action and thus were barred by res judicata or collateral estoppel. They also requested that the court enter a preliminary injunction under RCW 7.40.020. Jerry responded by again demanding

8

a jury trial and asserting that "every bit of [the claim of lien] is true, not any part of the Lien is Frivolous." CP at 69.

The court held a show cause hearing, after which it granted Virgil and Tera's motion to release the lien claims and entered a preliminary injunction. The court found that Jerry had "violated and will continue violating the property rights of" Virgil and Tera. CP at 70.

On August 3, 2022, Jerry filed a demand to stay the execution of the court's order "until such time as a jury has ruled on said Order." CP at 74. He asserted it was "mandatory" that the case proceed to a trial by jury and, by denying him a trial by jury, the superior court judge had "waived immunity to a personal lawsuit for liability and damages." CP at 76. Virgil and Tera countered that Jerry had no right to a jury trial under the frivolous lien statute or to stay the court's order. The court agreed and denied Jerry's requests.

Jerry timely appealed.

## ANALYSIS

WHETHER JERRY'S CLAIMS OF LIEN WERE FRIVOLOUS

Jerry contends the trial court erred by dismissing his claims of lien. He argues the liens were not frivolous and the facts are in dispute.

Whether the facts are in dispute is inconsequential. Once a dispute has been litigated and decided, the facts may not be relitigated and are subject to summary dismissal.

Res judicata and collateral estoppel are doctrines that preclude "relitigation of that which has previously been litigated." *Luisi Truck Lines, Inc. v. Wash. Utils. & Transp. Comm'n*, 72 Wn.2d 887, 894, 435 P.2d 654 (1967). The doctrines are not intended to deny a litigant his day in court; rather, they let previous judgments rest. *Id.* "Whether collateral estoppel or res judicata apply are questions of law that we review de novo." *Weaver v. City of Everett*, 194 Wn.2d 464, 473, 450 P.3d 177 (2019).

Res judicata has broader implications than collateral estoppel. Res judicata, sometimes referred to as claim preclusion, bars not only claims that were raised and litigated, but also bars claims that could have been raised and litigated in the prior action. *Hisle v. Todd Pac. Shipyards Corp.*, 151 Wn.2d 853, 865, 93 P.3d 108 (2004).

For res judicata to apply, the prior action must have resulted in a final judgment on the merits, and the prior and subsequent actions must involve the same (1) subject matter, (2) cause of action, (3) persons or parties, and (4) quality of persons for or against whom the decision is made. *Williams v. Leone & Keeble, Inc.*, 171 Wn.2d 726, 730, 254 P.3d

818 (2011). As explained below, res judicata bars Jerry from litigating the claims he now seeks to relitigate.

In 2012, Jerry recorded claims of lien on Unit 120 and Unit 45. In 2013, he filed an action to foreclose those lien claims. Virgil and Tera moved to have those claims of lien dismissed as frivolous. The trial court granted their request. Years later, in 2018, the trial court disposed of the rest of Jerry's claims by denying his request to impose an express trust or a constructive trust. It then entered judgment in favor of Virgil and Tera. We affirmed and later issued our mandate. Thus, the prior action resulted in a final judgment.

Here, application of the first, third, and fourth elements of res judicata are straightforward. The first element, same subject matter, is met. Both actions involve claims of lien involving Unit 45 and Unit 120. The third element, same persons or parties, is met. Jerry is on one side of the dispute, while Virgil and Tera are on the other. The fourth element, the same quality of persons, is met. Jerry is claiming an ownership interest in Unit 45 and Unit 120 against the title owners, Virgil and Tera.

Application of the second element, same cause of action, requires greater discussion. There is no single test for whether two causes of action are the same, but we look to

11

"(1) [W]hether rights or interests established in the prior judgment would be destroyed or impaired by prosecution of the second action; (2) whether substantially the same evidence is presented in the two actions; (3) whether the two suits involve infringement of the same right; and (4) whether the two suits arise out of the same transactional nucleus of facts."

*Hayes v. City of Seattle*, 131 Wn.2d 706, 713, 934 P.2d 1179, 943 P.2d 265 (1997) (alteration in original) (quoting *Rains v. State*, 100 Wn.2d 660, 664, 674 P.2d 165 (1983)).

The first consideration, impairment of rights or interests, is met. In the first action, the trial court determined that the claims of lien were frivolous and Jerry's theories for recovering a portion of Unit 120 and Unit 45 were legally and factually insufficient. In the present action, Jerry seeks recovery of the same properties and similar damages. The rights established in the first action would be entirely reversed if Jerry prevailed in the second action.

The second, third, and fourth considerations are also met. Both actions (as reflected in Jerry's Affidavits of Facts) involve virtually the same evidence, the same purported infringement of rights, and the same transactional nucleus of facts.

We conclude that res judicata bars Jerry from relitigating his claims against Virgil and Tera.

WHETHER JERRY HAD A RIGHT TO HAVE HIS CLAIMS DECIDED BY A JURY

Jerry contends he was denied his constitutional right to a jury trial. We disagree.

We review claims of constitutional violations de novo. *State v. Lynch*, 178 Wn.2d 487, 491, 309 P.3d 482 (2013). As an initial matter, contrary to Jerry's arguments, the United States Constitution does not protect his right to a civil jury trial in a Washington court:

> The seventh amendment to the United States Constitution does not apply through the Fourteenth Amendment to the states in civil trials. *Minneapolis & St. L. R.R. v. Bombolis*, 241 U.S. 211, 60 L. Ed. 961, 36 S. Ct. 595 (1916); *Walker v. Sauvinet*, 92 U.S. 90, 23 L. Ed. 678 (1876). The right to jury trial in civil proceedings is protected solely by the Washington Constitution in article 1, section 21.

*Sofie v. Fibreboard Corp.*, 112 Wn.2d 636, 644, 771 P.2d 711, 780 P.2d 260 (1989). Because the federal right to a jury trial is not implicated here, we confine our analysis to the right to a jury trial under our state constitution.

Article I, section 21, of the Washington Constitution states that "[t]he right of trial by jury shall remain inviolate." That does not, as Jerry contends, mean that citizens have an "absolute right" to a jury trial in all cases. Appellant's Br. at 4. "[T]he right of trial by jury is not limitless." *Davis v. Cox*, 183 Wn.2d 269, 289, 351 P.3d 862 (2015), *abrogated on other grounds by Maytown Sand & Gravel, LLC v. Thurston County*, 191 Wn.2d 392, 423 P.3d 223 (2018). To hold the right to a jury trial inviolate, as mandated by our state

13

constitution, means that the right to a jury trial must not be diminished from what it has always been. *Sofie*, 112 Wn.2d at 656.

"At its core, the right of trial by jury guarantees litigants the right to have a jury resolve questions of disputed material facts." *Davis*, 183 Wn.2d at 289. The question in the present case is whether an issue of fact continues to exist after it has been fully litigated and determined in a prior case. This exact question was decided in *Nielson v. Spanaway General Medical Clinic, Inc.*, 135 Wn.2d 255, 267, 956 P.2d 312 (1998).

In *Nielson*, the court discussed *Parklane Hosiery Co. v. Shore*, 439 U.S. 322, 99 S. Ct. 645, 58 L. Ed. 2d 552 (1979). *Nielson*, 135 Wn.2d at 268. There, the United States Supreme Court stated, "'[O]nce an issue has been resolved in a prior proceeding, there is no further factfinding function to be performed.'" *Id.* (quoting *Parklane*, 439 U.S. at 336 n.23). *Nielson* found *Parklane* "persuasive, sound and consistent with Washington law." *Id. Nielson* concluded:

> Although the factual issue of damages is a jury question in Washington, there must be an issue of fact to resolve in order for that right to arise. Where the issue has been resolved in a prior proceeding, no factfinding duty remains for a jury on that issue.
> We hold the Nielsons had no right to a jury trial on the issue of damages because no factual issue remained to be decided once the [prior litigation] had determined the amount of damages suffered by the Nielsons as a result of the injury.

*Id.* at 269.

No. 39097-7-III
*Redwine v. Redwine*

Similarly, Jerry had no right to a jury trial in this civil action because no factual issue remained to be decided once the 2013 litigation determined the rights between the parties to Unit 45 and Unit 120. We conclude that the trial court did not violate Jerry's right to a jury trial by dismissing the present action.[3]

REASONABLE COSTS AND ATTORNEY FEES

Virgil and Tera request reasonable costs and attorney fees for this appeal. We grant their request.

While parties typically bear their own attorney fees, we may award fees when authorized by a contract, statute, or recognized ground in equity. *Fisher Props., Inc. v. Arden-Mayfair, Inc.*, 106 Wn.2d 826, 849-50, 726 P.2d 8 (1986).

Under RCW 60.04.081(4), if the court finds a lien was frivolous, it "shall issue an order . . . awarding costs and reasonable attorneys' fees to the applicant to be paid by the lien claimant." Such an award is mandatory and encompasses attorney fees for the

---

[3] Jerry does not articulate whether he believes the trial court's grant of injunctive relief also violated his right to a jury trial. To avoid a motion for reconsideration, we address the issue: Injunctive relief is an equitable remedy. *Kucera v. Dep't of Transp.*, 140 Wn.2d 200, 209, 995 P.2d 63 (2000). And there is no right to a jury trial for equitable relief. *Bird v. Best Plumbing Grp., LLC*, 175 Wn.2d 756, 769, 287 P.3d 551 (2012).

prevailing party on appeal. *Lennar Multifamily Builders, LLC v. Saxum Stone, LLC*, 18 Wn. App. 2d 435, 452, 492 P.3d 175 (2021). Because we affirm the trial court's determination that Jerry's claims of lien were frivolous, subject to RAP 18.1(d), we grant Virgil and Tera's request for reasonable costs and attorney fees on appeal.

Affirmed.

A majority of the panel has determined this opinion will not be printed in the Washington Appellate Reports, but it will be filed for public record pursuant to RCW 2.06.040.

_____
Lawrence-Berrey, A.C.J.

WE CONCUR:

_____     _____
Pennell, J.                          Staab, J.